624 P.2d 502

**STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, Appellant,**

v.

**RIO RANCHO ESTATES, INC., Appellee.**

No. 12882.

Supreme Court of New Mexico.

Feb. 3, 1981.

Rehearing Denied March 4, 1981.

Jeff Bingaman, Atty. Gen., Richard A. Simms, Stephen D. Dillon, Sp. Asst. Attys. Gen., Santa Fe, for appellant.

Shoenfeld & Engel, Peter B. Shoenfeld, Santa Fe, for appellee.

## OPINION

FEDERICI, Justice.

Appellee undertook a drilling program in 1971 just outside the boundaries of the Rio Grande Underground Water Basin. Of six holes drilled, only the well at issue in this case was logged, reamed and cased. A short pump test of the well was conducted and the hole was capped some time prior to October 1971. The outside diameter of the casing was seven inches and the depth of the well was 1,500 feet.

On September 7, 1973, the State Engineer extended the Rio Grande Basin to include the land on which the capped well was situated.

On July 2, 1975, appellee filed a declaration of a pre-basin water right and applied for a permit to repair the well. The State Engineer approved the permit subject to the condition that the well would not be deepened or enlarged. Because the well could not be repaired for a number of reasons, appellee applied on December 5, 1975 for a permit to change the location of the well. This application requested an 18-inch diameter well to replace the original 7-inch well. The State Engineer approved the application subject to certain conditions, including limitations that the maximum amount of water diverted annually would not exceed 2419.51 acre feet, that the diameter of the casing not exceed seven inches, and that the depth not exceed 1,500 feet.

Appellee notified the State Engineer that it was aggrieved by these latter two conditions and a hearing was held pursuant to Section 72–2–16, N.M.S.A. 1978. The recommendation of the hearing officer, as adopted by the State Engineer, imposed the size limitations. On de novo appeal, the district court found that appellee, in accordance with its intention to appropriate

water, was entitled to continue to construct the well pursuant to the doctrine of relation back under *State v. Mendenhall*, 68 N.M. 467, 362 P.2d 998 (1961). This right included the right to change the location of the well as a part of the normal course of well drilling. The court held that the size limitations could not be imposed. We affirm the trial court.

We address the following issues:

1. Whether appellee's failure to object to size limitations imposed by the State Engineer on the permit to repair the well operates to bar litigation of the size limitations now;

2. Whether the *Mendenhall* doctrine applies in this case, giving appellee an inchoate water right, not subject to limitation by the State Engineer;

3. Whether the trial court exercised independent discretion in making its findings of fact and conclusions of law; and

4. Whether the trial court committed reversible error in admitting certain documents concerning appellee's diligence in development of the well.

### I.

When appellee applied for the permit to repair the well, it was required to describe the purpose of the acquired right, and the type of repair contemplated. It stated the "[r]ight was acquired for subdivision, municipal, recreational and related purposes." Appellee indicated that the only type of repair contemplated was cleaning out the well to its original depth. The State Engineer approved this application, subject to the conditions that "[t]he well shall not be deepened or the diameter enlarged."

■ Section 72–2–16 provides that "any person aggrieved by the decision, act or refusal to act [by the State Engineer], is entitled to a hearing, if a request for a hearing is made in writing within thirty days." Appellee did not request a hearing on that decision. The State Engineer asserts· that the doctrine of administrative res judicata bars litigation of the issue of the depth of the well and the diameter of the

pipe. It is not disputed that the decision of the State Engineer in granting the permit had the force and effect of a judicial judgment.· The seminal case on this question in New Mexico is *City of Socorro v. Cook*, 24 N.M. 202, 173 P. 682 (1918). However, for the prior judgment to apply to the case here it must have addressed "questions, points or matters of fact *in issue* ... which were *essential to a decision*, and which were decided in support of the judgment." (Emphasis added.) *Paulos v. Janetakos*, 46 N.M. 390, 393, 129 P.2d 636, 638 (1942).

■ In its application for repair, appellee did not request a change in the amount of water it could use, nor was a statement of limitation of the right required for the State Engineer to grant approval. A party should not be required to litigate every incidental matter which might come up in the course of a proceeding before the State Engineer or forever lose its claim. Since the depth of appellee's well and the diameter of the pipe and .the amount of water were not in issue and not essential to the prior decision, the State Engineer's determination did not bar the subsequent litigation of those issues here.

### II.

In *State v. Mendenhall, supra,* the issue before the Court was:

Does a landowner who lawfully initiates the development of an underground water right and carries the same to completion with reasonable diligence acquire a water right with a priority date as of the beginning of his work, notwithstanding the fact that the lands involved were put into a declared artesian basin before work was completed and the water put to beneficial use on the ground?

*Id.* 68 N.M. at 468, 362 P.2d at 999.

In that case, Mendenhall's predecessors commenced drilling for the development of water for irrigation until they believed an adequate supply was reached. Upon testing, they determined the supply was inadequate. Five months later, they entered into an oral contract for further drilling. The

contract was reduced to writing two months later. The renewed drilling began almost simultaneously with a declaration by the State Engineer that the area encompassing the drilling operation was within an underground water basin. The drilling efforts were successful in providing sufficient water for Mendenhall's desired use, and irrigation began the same year. The State Engineer claimed that Mendenhall did not have a valid water right because it was not applied to beneficial use prior to declaration of the basin. However, this Court ruled that "the right to continue to develop underground water under the general law was in no way altered pending a declaration." *Id.* at 472, 362 P.2d at 1002.

Section 72–12–4, N.M.S.A. 1978 provides: "Existing water rights based upon application to beneficial use are hereby recognized. Nothing herein contained is intended to impair the same or to disturb the priorities thereof." In *Mendenhall*, this Court interpreted the statute as follows:

> [W]hen the legislature used the term "based upon" it had in mind the entire procedure necessary to accomplish a beneficial use of water. It is ofttimes a long drawn out enterprise that must be accomplished between initiation of a right and the final act of irrigating a quantity of land. Months and years may reasonably elapse. A four year span is recognized under certain circumstances in [former statutory law]. To conclude otherwise would possibly result in years of effort and many dollars being lost by one who commenced an appropriation and had drilled a well, installed his equipment, dug his ditches and leveled his land, when on the day before he was to turn water onto the land the basin was declared by the State Engineer.

*Id.* at 473, 362 P.2d at 1002–03.

The State Engineer argues that as a matter of law, *Mendenhall* should not apply to this case because Rio Rancho had only drilled a hole, placed a 7-inch casing unit, conducted a short pump test, and sealed it off prior to declaration of the basin. No physical activities concerning the well took place for four years after that. The State Engineer contends that this is the same issue which was resolved in *State, etc. v. Molybdenum Corp. of America*, 570 F.2d 1364 (10th Cir. 1978). The State Engineer interprets that decision to mean that completion of exploratory wells did not initiate a *Mendenhall* right. We do not read the case as supporting that result. In that case, Molycorp applied for a permit to complete exploratory holes not as sources of new rights, but as alternate diversion points for previously recognized water rights. Because of these facts, the question of development of a *Mendenhall* right was not addressed by that court.

■ We think that the proper test was set out in *Mendenhall*. It requires the developer to: (1) legally commence drilling their well prior to declaration of the basin; (2) proceed diligently to develop the water pursuant to a plan; and (3) apply the water to beneficial use. Requirements (2) and (3) may be held in abeyance or tolled in cases such as the present one where litigation over a *Mendenhall* right interrupts development and application to beneficial use.

■ Compliance with these requirements involves questions of fact. The trial court found that Rio Rancho had taken several steps toward the completion of a producing water well to supply water to its subdivision for municipal, recreational and related purposes, prior to the declaration of the basin. The trial court also found that the 7-inch casing was installed for the purpose of testing the well, and that installation of the casing was necessary for this purpose. A necessary corollary of this finding is that the 7-inch casing was placed in the well during the stage of development, and not as a final stage for production of the water under the intended water right. There was substantial evidence before the trial court to support its findings, and to support creation of a valid water right under *Mendenhall*. In any event, the State Engineer has conceded Rio Rancho has a right to a 7-inch well. This right could only have been granted under the *Mendenhall* exception.

The issue then is whether the State Engineer had a right to limit Rio Rancho to a 1,500 foot deep well with a 7-inch casing. We have stated that there was substantial evidence before the trial court for it to find that Rio Rancho intended to develop a right for municipal, recreational and related purposes. What is the limitation on such a right? Normally, it is a matter left up to the courts in adjudication proceedings. *State ex rel. Reynolds v. Lewis*, 84 N.M. 768, 508 P.2d 577 (1973). When determining the extent of a municipal water right, it is appropriate for the court to look to a city's *planned* future use of water from the well caused by an increasing population. *State v. Crider*, 78 N.M. 312, 431 P.2d 45 (1967). Thus, the amount of water a city is presently using from a well may not be the limit of its water right. Likewise, the size of the well casing at the present may not be the limit of that right.

Here, the State Engineer limited Rio Rancho to an annual withdrawal of 2419.51 acre feet from the well. This latter limitation was not appealed and is not raised before us. The State Engineer does have the right to impose limitations on water rights in declared basins when an appropriator requests a change in the location of the well. He may impose the limitations if he finds the change will impair existing rights. *City of Roswell v. Berry*, 80 N.M. 110, 452 P.2d 179 (1969). Here, he apparently did not find any such impairment so long as Rio Rancho did not withdraw more than 2419.51 acre feet of water from the well annually. He cannot impose limitations on the size and depth of the well under the circumstances present in this case, particularly where substantial evidence supports the conclusion that the 7-inch well Rio Rancho drilled was only one stage in the development of the water right.

We do not express an opinion as to the extent of Rio Rancho's water right. Nor do we foreclose future action on the part of the State Engineer if facts exist which would warrant a hearing to determine that Rio Rancho has not continued to comply with the requirements in *Mendenhall* or any other statutory requirements. Under the present fact situation the size and depth limitations on Rio Rancho's well were improperly imposed.

## III.

The State Engineer complains that the trial court adopted verbatim requested findings and conclusions of Rio Rancho. The record also reflects that the court adopted some of the State Engineer's requested findings. The State Engineer states that this shows lack of independent judgment by the trial judge and therefore this Court should weigh the trial court's findings more carefully than it would otherwise deem necessary. In *Jesko v. Stauffer Chemical Company*, 89 N.M. 786, 558 P.2d 55 (Ct.App.1976), Chief Judge Wood stated:

The fact that the trial court made its findings in the language submitted by the parties does not show an absence of independent judgment by the trial court. The fact that the findings made were chosen from various requested findings indicates the exercise of an independent judgment.

*Id.* at 789–90, 558 P.2d at 58–59.

We agree with this statement. The trial court is affirmed on this issue.

## IV.

Certain exhibits were attached to the transcript from the administrative hearing before the State Engineer. Counsel for the State Engineer moved admission of the transcript and it was admitted by the trial court. The exhibits were certain records of Rio Rancho that were introduced at the administrative hearing relating to expenses, plans and diligence in proceeding toward production of the well. Apparently the State Engineer's copy of the transcript did not include the exhibits. When Rio Rancho later requested the court to refer to these exhibits, the State Engineer objected. The trial judge refused to consider the objection since the exhibits were already admitted. The basis of the objection was that the business records did not come within the

business record exception to the hearsay rule because they facially indicated preparation in anticipation of a dispute and lack of trustworthiness.

We agree with the State Engineer that an objection can be timely if not made at the exact time the evidence is proffered so long as it is made when the opposing party may reasonably become aware of the grounds for objection for the first time. *Young v. Dueringer*, 401 S.W.2d 165 (Mo.App.1966). However, that is not the case before us. Here, the State Engineer moved admission of the very evidence he later objected to. He should have been reasonably aware of this evidence at the time he moved its admission. Even if we were to accept the State Engineer's contention, he still had the burden of showing "that the [trial] court considered such testimony in deciding the case." *Radcliffe v. Chaves*, 15 N.M. 258, 263, 110 P. 699, 700 (1910), quoted with approval in *Davis v. Davis*, 83 N.M. 787, 789, 498 P.2d 674, 676 (1972). In this case, the evidence complained of was merely cumulative, and there was other substantial evidence in the record to support the trial court's findings and conclusions concerning Rio Rancho's plans and diligence under the *Mendenhall* requirement. Thus, even if it was error for the trial court not to consider the State Engineer's objection, the error was nonprejudicial and harmless. *See Davis v. Davis, supra.*

We have considered the other arguments raised by the State Engineer on appeal and deem them without merit.

The trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.