The State Engineer, Jeris DANIELSON, and the Division Engineer for Water Division No. 3, Steven Vandiver, Objectors–Appellants,

v.

John B. MILNE, Applicant–Appellee.

No. 87SA196.

Supreme Court of Colorado,
En Banc.

Dec. 12, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carol D. Angel, Asst. Atty. Gen., Denver, for objectors-appellants.

Cathy Mullens, Del Norte, for applicant-appellee.

ERICKSON, Justice.

The State Engineer, Jeris Danielson, and the Division Engineer for Water Division

No. 3, Steven Vandiver, appeal the decision of the district court for Water Division No. 3 (water court) granting appellee John B. Milne's (Milne) conditional water rights application for wells located in Rio Grande County, Colorado. Because Milne did not supplement his application with valid well permits as required by Colorado statute, we reverse the water court's judgment and remand to the water court with directions to deny Milne's application for a conditional water right.

The issue on appeal centers on the Water Right Determination and Administration Act of 1969 (Administration Act), sections 37–92–101 to –602, 15 C.R.S. (1973 & 1988 Supp.) and the Colorado Ground Water Management Act (Management Act), sections 37–90–101 to –141, 15 C.R.S. (1973 & 1988 Supp.). On April 20, 1973, the state engineer issued well permit numbers 017155–F and 017154–F to Milne for two wells to be used for commercial purposes. These wells were to be located in the over-appropriated Rio Grande alluvium. The permits were issued as replacements for permit number 10567–F, which had been issued prior to April 21, 1967, and which Milne had purchased from the prior owners. See § 37–90–137(3)(a), 15 C.R.S. (1973 & 1988 Supp.). Between May 5 and June 23, 1973, Milne drilled the wells and installed temporary pumps to run pump tests. Milne filed Statements of Beneficial Use with the state engineer on June 28, 1973, pursuant to section 37–90–137(3)(b),15 C.R.S. (1973), in which Milne indicated that water from the wells had been put to beneficial use. However, because the state engineer's files for those wells have been misplaced or lost, it is not known whether the engineer ever received the statements. From June 23, 1973, until 1982, the wells remained unused. Then, in 1982, the wells were again tested with temporary pumps, and the results were sent to the state engineer. Milne contends that by conducting the pump tests and submitting Statements

of Beneficial Use, he has put the water to beneficial use.

On March 15, 1983, Milne filed two applications with Water Division No. 3 seeking to obtain absolute water rights to the well water. These applications were designated case numbers 83CW19 and 83CW20, and sought absolute water rights pursuant to permit numbers 017155–F and 017154–F, respectively.[1] On October 30, 1985, the application in case number 83CW19 was denied by the referee because a field inspection trip of the well had revealed that no permanent pumps were ever installed and that the water had never been put to beneficial use. Milne then requested that he be allowed to amend both applications to seek conditional, rather than absolute, water rights. The referee granted the request for conditional water rights, and on October 31, 1986, approved both amended applications. The state timely protested the approval of both applications, arguing that Milne's applications were not supplemented by valid well permits as required by section 37–92–302(2), 15 C.R.S. (1988 Supp.).

Both applications were then consolidated, and a hearing was held before the water court on March 19, 1987. On April 8, 1987, the water court affirmed the referee and granted the conditional water rights application. The water court based its decision on three independent findings: (1) Milne had filed well completion reports and Statements of Beneficial Use with the state engineer; (2) the state engineer failed to send Milne notice that the Statements of Beneficial Use were never received; and (3) Milne demonstrated the requisite intent to put the water to beneficial use. The application was thus found to comply with the statutory requirements and to have been properly granted by the referee.

## I. BENEFICIAL USE

■ The state claims that the water court was without statutory authority to

---

1. The application also sought absolute water rights pursuant to permit numbers 53973 and 63968. However, the state did not oppose the claims for these permits at the hearing before the water court because the claims involved

small-capacity domestic wells and were not subject to sections 37–90–137(3) and 37–92–302(2). See § 37–92–602(1)(b) (providing that the provisions of the Administration Act do not apply to small-capacity domestic wells.).

hear Milne's application because the application was not supplemented by valid well permits as required by section 37–92–302(2), 15 C.R.S. (1988 Supp.), which states in part:

In the case of applications which will require construction of a well ... no application shall be heard on its merits by the referee or water judge until the application shall be supplemented by a permit or evidence of its denial by the state engineer pursuant to section 37–90–137 or evidence of the state engineer's failure to grant or deny such a permit within six months after application to the state engineer therefor.

The state contends that the permits submitted by Milne in support of his application had expired on July 1, 1973, more than nine and one-half years prior to his application, and were therefore invalid. An expired well permit will not support an application for conditional water rights and does not constitute a valid permit under section 37–92–302(2). *See Kenneth M. Good Irrevocable Trust v. Bell,* 759 P.2d 48, 51 (Colo. 1988) (Since applicant's well permit expired before the application for conditional water rights was heard, the water court could not, under section 37–92–302(2), adjudicate the application). Thus our inquiry focuses on whether the permits expired before Milne submitted them to the water court in support of his conditional water rights application.

Permit numbers 017154–F and 017155–F were issued to Milne on April 20, 1973, as replacements for permit number 10567–F, and stated on their face that they were to expire on July 1, 1973. Section 37–90–137(3)(b), 15 C.R.S. (1973), provides in part:

Any permit to construct a well issued by the state engineer prior to April 21, 1967, shall expire on July 1, 1973, unless the applicant furnishes to the state engineer, prior to July 1, 1973, evidence that the water from such well has been put to beneficial use prior to that date.[2]

Milne contends that the permits did not expire on July 1, 1973, because he submitted evidence to the state engineer that water from the wells had been put to beneficial use prior to that date. Specifically, Milne argues that by filing a Statement of Beneficial Use with the state engineer on June 28, 1973, he submitted sufficient evidence that water from the wells had been put to beneficial use.

A Statement of Beneficial Use is a standardized form provided by the state engineer's office to assist well permit holders who wish to furnish evidence of beneficial use. The form contains the statement that "water from this well was first applied to a beneficial use for the purpose described herein on [date]," and the statement is to be signed, sworn to, and notarized. In his Statement of Beneficial Use, Milne said that water from permit numbers 017155–F and 017154–F had first been applied to beneficial use on May 26, 1973, and June 23, 1973, respectively.

"Beneficial use" is defined as "the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made...." § 37–92–103(4), 15 C.R.S. (1973). While the filing of a Statement of Beneficial Use is some evidence that water has been so applied, it is not irrefutable proof nor does it prevent a

---

2. Section 37–90–137(3)(a)(I) states that:

Any permit ... issued on or after April 21, 1967, shall expire one year after the issuance thereof, unless the applicant to whom such permit was issued shall furnish to the state engineer, prior to such expiration, evidence that the water from such well has been put to beneficial use or unless, prior to such expiration, the state engineer, upon application and with good cause shown as to why the well has not been completed ... extends such permit for only one additional period certain, not to exceed one year....

Because permit numbers 017154–F and 017155–F were replacement permits for number 10567–F, which was issued before April 21, 1967, and because the July 1, 1973, expiration date contained on both permits is strong evidence that permits 017154–F and 017155–F were issued under section 37–90–137(3)(b) and not section 37–90–137(3)(a)(I), section 37–90–137(3)(b) is applicable. We note however that if section 37–90–137(3)(a)(I) is applicable, then, absent beneficial use, the permits would have expired on April 21, 1974, or, if good cause shown, on April 21, 1975.

court's inquiry into whether beneficial use actually has been made. Actual beneficial use, rather than the mere filing of a Statement of Beneficial Use, is the touchstone to perfecting a well permit. *See Kuiper v. Warren,* 195 Colo. 541, 580 P.2d 32 (1978); *Peterson v. Ground Water Comm'n,* 195 Colo. 508, 579 P.2d 629 (1978); *Thompson v. Ground Water Comm'n,* 194 Colo. 489, 575 P.2d 372 (1978).

Milne argues that by drilling the wells and testing them with temporary pumps, he put the water to beneficial use. We addressed a similar argument in *Kuiper v. Warren,* 195 Colo. 541, 580 P.2d 32. In that case, the applicant received a conditional use permit on November 2, 1970, to construct a well and appropriate designated ground water. The permit expired within a year of issuance unless water had been put to beneficial use within that time. Three one-year extensions were subsequently granted which afforded the applicant until August 10, 1973, to perfect his appropriation. On December 11, 1974, the applicant filed a Statement of Beneficial Use in which he claimed that the water had been beneficially applied on September 10, 1973.

■ The Colorado Ground Water Commission refused to accept the statement on the grounds that the conditional use permit had expired on August 10, 1973, and could not be resurrected by an untimely statement. In affirming the commission's holding, we declared that:

> Designated ground water appropriators must construct their wells, place water to beneficial use, and comply with the statutory filing and time provisions or lose their right to divert. The trial court

properly found that the appellant, [who had drilled wells during the life of the permit], failed to place water to beneficial use within the life of the permit. *Id.* 195 Colo. at 545, 580 P.2d at 35. Likewise, in *Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629, we stated that "[a]n appropriator who constructs a well, but fails to apply the water to a beneficial use, does not acquire a valid water right." *Id.* 195 Colo. at 513, 579 P.2d at 633.[3] These passages clearly reveal that constructing a well does not automatically and independently constitute beneficial use of water.

Colorado's statutory water law scheme is designed in part to ensure that water is put to its earliest possible beneficial use. Beneficial use refers not only to merely taking steps to obtain water, but to actually using the water to accomplish the purpose for which it was appropriated. Beneficial use is not a goal which can be met by merely paying lip-service to the words by filing a beneficial use statement, but it is a concept that requires an applicant to take affirmative action and apply water to a beneficial use.

■ Milne stated in his permit applications that the water appropriated from the wells was to be used for commercial purposes. It was Milne's plan to develop the land into a trailer park or campground. However, the record reflects that during the time permit numbers 017154–F and 017155–F were in force, the water was never put to any commercial use. In fact, no permanent pumps were ever installed, and all that was done was to drill and test the wells with temporary pumps.[4] This

---

**3.** The disputes in *Kuiper v. Warren* and *Peterson v. Ground Water Commission* involved "designated ground water," while this case involves "underground water," two separate and mutually exclusive categories of water. *See Broyles v. Fort Lyon Canal Co.,* 638 P.2d 244 (Colo.1981). However, we find the reasoning of *Kuiper* and *Peterson* to be persuasive here because the statutory provisions regarding well permit expiration when *Kuiper* and *Peterson* were decided are nearly identical to the provisions now before us in this case. *See, e.g., Danielson v. Kerbs Agric., Inc.,* 646 P.2d 363 (Colo.1982) (Finding that the

Administration Act may in some circumstances be applied to designated ground water cases.).

**4.** At the hearing before the water court held on March 19, 1987, the following exchange occurred between Milne, his attorney (Woodard), and an attorney for the state (Atencio):

> Q: [(By Atencio)] And if I could refer your attention, it says in the middle of the page [of the statement of beneficial use] that "Water from this well was first applied to a beneficial use for the purposes described herein on the 26th day of May 1973"; is that statement true?

alone does not constitute beneficial use in light of our decisions in *Kuiper v. Warren* and *Peterson v. Ground Water Commission*. Because there was no beneficial use, Milne's permits were not extended past their stated expiration date of July 1, 1973, and consequently the water court was without authority to hear Milne's conditional water rights application. § 37–92–302(2).

## II. FAILURE TO GIVE APPLICANT NOTICE

 The water court cited the state engineer's failure to give Milne notice that it had not received his Statement of Beneficial Use as further support of its determination that the application should be approved. Section 37–90–137(3)(c), 15 C.R.S. (1988 Supp.), provides in part that where an applicant fails to submit evidence of beneficial use prior to the permit's expiration, the state engineer must notify the applicant by certified mail of the failure. The notice provides that an applicant who has put water to beneficial use before the permit has expired but has failed to submit evidence of beneficial use because of excusable neglect, inadvertence, or mistake shall have an opportunity to submit the required proof.[5] § 37–90–137(3)(c).

The class of persons this statute is designed to protect is those applicants who have put water to beneficial use, but because of some type of neglect, mistake, or inadvertence, have failed to notify the state engineer. Because Milne never applied his water to beneficial use, he does not fall within this class. Had the state engineer given Milne the required notice, Milne could not have availed himself of the statute since he never put water to beneficial use prior to the permit's expiration date.

Moreover, section 37–90–173(3)(c) was enacted in 1977, some four years after Milne's permits expired. Prior to the statute's passage, the state engineer was under no duty to give applicants notice of a permit's expiration. In *Town of DeBeque v. Enewold*, 199 Colo. 110, 606 P.2d 48 (Colo.1980), this court held that notice provisions enacted in 1975 could not be retroactively applied to revive a conditional water right that was lost for failing to comply with filing requirements. We now similarly find that the notice requirements contained in section 37–90–137(3)(c) may not be used retroactively to revive permits which had expired prior to the statute's passage.

Milne's remaining arguments are without merit. Accordingly, the judgment of the water court is reversed and the case is remanded to the water court with directions to deny Milne's application for a conditional water right.

A: [ (By Milne) ] Well, it was pumped on that date.
Q: No. The question is, ["]Was it applied to beneficial use?["]
MR. WOODARD: May it please the Court, he wants to badger the witness about beneficial use, and I've made my position clear on this Mickey Mouse beneficial use statement for five years. They require it. They literally require people to perjure themselves, and I'm sick of it. And I'm sick of the attorney general trying to make people out to be big criminals.
THE COURT: He's asking for a legal conclusion of a lay witness. The objection is sustained.
Q: (By Mr. Atencio) Mr. Milne, other than just the pump test, was the well put to any other use than that?
A: No.

Q: And when the pump test was conducted, did [the water] basically just spill onto the ground; is that correct?
A: I think it is.
Q: Is there any commercial property? Is there any development on that property?
A: No.
Q: Is there any sanitation system, any water system?
A: No.
Q: So as far as you know, the water from this well was basically used to test the pump; is that true?
A: I think so.

5. Section 37–90–137(3)(c) provides in part:
 The notice shall give the applicant the opportunity to submit proof that the water was put to beneficial use prior to the expiration date, but, due to excusable neglect, inadvertence, or mistake, the applicant failed to submit the evidence on time.