901 P.2d 745

**STATE of New Mexico ex rel. Eluid
L. MARTINEZ, State Engineer,
Plaintiff–Appellant,**

v.

**Jean Jo McDERMETT and J.B. McLean,
Defendants–Appellees.**

No. 15666.

Court of Appeals of New Mexico.

May 19, 1995.

Tom Udall, Attorney General, Stephen R. Farris, Special Asst. Atty. Gen., New Mexico State Engineer Office, Santa Fe, for plaintiff-appellant.

Fred H. Hennighausen, Gregory L. Townsend, Interjurist Law Firm, P.C., Roswell, for defendants-appellees.

## OPINION

DONNELLY, Judge.

The State Engineer appeals from an order of the district court in favor of Jean Jo McDermett and J.B. McLean (Defendants),

determining that Defendants established a priority date for water rights to an artesian well owned by Defendants and appurtenant to their eighty-four-acre tract. On appeal the State Engineer argues that the district court erred in finding that (1) Defendants had proved that their priority date to appropriate water related back to 1907, (2) Defendants and their predecessors in title had diligently applied water to a beneficial use, and (3) Defendants' water rights on a twenty-acre tract had not been forfeited or abandoned by nonuse. We affirm in part and reverse in part.

*FACTS*

The water rights involved in this appeal have a complex and lengthy legal history. The eighty-four-acre tract upon which the water rights and artesian well in question are located is situated north of Roswell and within an extension to the Roswell Artesian Basin as declared on January 12, 1948. These water rights have been the subject of prior appeals in *State ex rel. Reynolds v. Allman,* 78 N.M. 1, 427 P.2d 886 (1967); *State ex rel. Reynolds v. McLean,* 76 N.M. 45, 412 P.2d 1 (1966); and *State ex rel. Reynolds v. McLean,* 74 N.M. 178, 392 P.2d 12 (1964). In 1966 a decree was entered establishing a priority date of 1947 for Defendants' well. That decree was reversed by the Supreme Court in *Allman,* which held that due process requirements necessitated that the defendants in the consolidated suit in the Roswell Basin adjudication should be given an opportunity to establish earlier priorities for ground water rights under the doctrine of relation back. *Allman,* 78 N.M. at 4, 427 P.2d at 889. This appeal is from a final order and decree in Subfile Nos. RAB–1643 and –1701 of *State v. Lewis,* Chaves County District Court Cause Nos. 20294 and 22600 (consolidated actions).

On August 30, 1990, Defendants were ordered to show cause why the priority date for their water rights should not be adjudicated to be March 1947. Defendants contended that their priority date should be November 7, 1907. During trial of the instant case, Defendants offered documentary evidence that showed that a well denominated RA–3121 was drilled on the land in question prior to the declaration of the Roswell Artesian Basin by one of their predecessors in title, Pocahontis Hyde. Water from the well was diverted and used to grow a crop on twenty acres of land in 1907 within the larger tract. The exhibits also showed that main ditches and laterals were dug, and that water was diverted onto the remaining portion of the land. Hyde was granted a desert land entry patent in November 1908. Evidence was also presented showing, among other things, that the Bureau of Land Management Grazing Service Range Survey Water Report indicated that the well on Defendants' land was equipped and used for watering livestock in 1939. Defendants showed by documentary evidence that in 1948 water was used by a predecessor in title to grow crops on the remainder of the land in question, except for three acres which could not be irrigated.

The State Engineer presented the testimony of Frank Craig, an expert in aerial photographic analysis. Craig opined that aerial photographs taken in 1946 of Defendants' land showed that it had not been irrigated for approximately forty years. Craig also testified that aerial photographs taken in 1950 showed that the land had been cleared for irrigation between 1946 and 1950. To counter this testimony, Defendants called Jackie Atkins, an expert witness, who testified that in his opinion the aerial photographs revealed evidence of past cultivation, furrowing, and irrigation.

Following the trial, the district court held that all of Defendants' land, with the exception of three acres situated in the NW ¼ of the tract, had been irrigated and the water had been put to beneficial use. The district court also determined that Defendants had proved their priority date for their water rights related back to 1907, when Hyde filed proofs under the Desert Land Acts of her use of water from the well for irrigation of the land in question. The parties have stipulated that earlier references to an eighty-acre tract should be eighty-four acres, as defined by a later survey.

*PROOF OF PRIORITY DATE*

The State Engineer contends that Defendants failed to meet their burden of proof to

establish that the water rights claimed by them relate back to 1907, that the district court erred in determining that Defendants put the water to a beneficial use, and that, except as to a twenty-acre parcel, the district court erred in finding that Defendants ever grew crops or diligently developed their water rights on the remainder of the land in question until sometime in 1948.

■ Defendants had the burden of proving their claim of relation back of their water rights priority date to 1907. *Allman,* 78 N.M. at 4, 427 P.2d at 889. In order to prove such claim, Defendants were required to show that they (1) legally commenced drilling their well before declaration of the artesian basin, (2) proceeded diligently to develop a means of applying the water pursuant to a plan, and (3) applied the water to beneficial use within a reasonable time. *State ex rel. Reynolds v. Rio Rancho Estates, Inc.,* 95 N.M. 560, 563, 624 P.2d 502, 505 (1981); *State ex rel. Reynolds v. Mendenhall,* 68 N.M. 467, 475, 362 P.2d 998, 1004 (1961). Here, the State Engineer concedes that the well was drilled prior to declaration of the extension to the Roswell Artesian Basin in 1948.

■ The two remaining elements, diligent development and beneficial use, are closely connected. Diligent development is important because it allows relation back of the priority date to the beginning physical acts to take and use water, even though the beneficial use did not occur until some time after the drilling of the well or the laying out and digging of irrigation ditches. If application of the water to a beneficial use is not established within a reasonable time period, however, prior diligent development is irrelevant. *State ex rel. State Engineer v. Crider,* 78 N.M. 312, 315–16, 431 P.2d 45, 48–49 (1967) (application of water to beneficial use is essential to completed appropriation).

Here, the documentary proofs of Hyde for her claim under the Desert Land Acts show that she began a process to develop a water right over the entire tract. She dug a well, installed a pump, and laid out and dug ditches in order to irrigate the property. This was an essential aspect of the prior owner's development of the irrigation water rights in question. *Farmers Dev. Co. v. Rayado Land & Irrigation Co.,* 28 N.M. 357, 368–69, 213 P. 202, 206–07 (1923). If there is evidence to show that the development and application of the water rights resulted in actual beneficial use within a reasonable time, the priority date may be found to relate back to 1907 when the ditches were initially laid out. *See Rio Rancho Estates,* 95 N.M. at 562–63, 624 P.2d at 504–05.

■ The real issue here, however, is whether there was proof of beneficial use of water over the entire property. Beneficial use is the basis for a water right in New Mexico. N.M. Const. art. XVI, § 3. Beneficial use has been defined as "the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken." *State ex rel. Erickson v. McLean,* 62 N.M. 264, 273, 308 P.2d 983, 988 (1957). The concept requires actual use for some purpose that is socially accepted as beneficial. An intended future use is not sufficient to establish beneficial use if the water is not put to actual use within a reasonable span of time. *See Crider,* 78 N.M. at 315–16, 431 P.2d at 48–49. Furthermore, while running water over land without growing crops or irrigating native grasses may constitute a preparatory use of the water for a period of time, doing so for a number of years can only be characterized as waste. *McLean,* 62 N.M. at 270, 308 P.2d at 987.

Here, the evidence presented by Defendants to prove beneficial use consisted of the documentary proofs of Hyde for her claim under the Desert Land Acts and the opinion testimony of Atkins interpreting the aerial photographs. In the documentary proofs of Hyde, she stated that she drilled a well, put a pump in it, and dug two main ditches and approximately six miles of laterals on the property, except for three acres that were situated too high to be irrigated. In 1907 water apparently ran through all the ditches and laterals. There is no evidence that water had run through those ditches in later years or that anything was grown on that land, with the exception of the twenty acres. However, the documentary proofs show that

crops were grown on the twenty acres. Based on these proofs, Defendants claim that water was applied to the entire tract in 1907 and that the application was a beneficial use. The district court found that "[a]ll of the land was reclaimed from its former desert-like condition to such an extent that it was capable of producing agricultural crops.... [W]ater was diverted, appropriated and beneficially used upon all of said land for irrigation, agricultural and reclamation purposes."

◼◼◼ The State Engineer asserts that the district court in adopting its findings did not distinguish between *diversion* and *beneficial use,* and that a one-time diversion of water onto the land was not sufficient to establish beneficial use. We find this argument persuasive. A diversion alone is not beneficial use. There must be an ultimate, actual beneficial use of the water resulting from the diversion. *See Jicarilla Apache Tribe v. United States,* 657 F.2d 1126, 1135 (10th Cir.1981) (storage for future use not beneficial use); *Danielson v. Milne,* 765 P.2d 572, 574–75 (Colo.1988) (en banc) (constructing a well, without more, does not constitute beneficial use of water). Similarly, mere diversion of water into a canal or ditch, without applying water to irrigating a crop or other valid use, does not satisfy the requirement of a beneficial use. *See Carlsbad Irrigation Dist. v. Ford,* 46 N.M. 335, 340, 128 P.2d 1047, 1050–51 (1942); *Hostetler v. State,* 203 Neb. 776, 280 N.W.2d 75, 78 (1979). In particular, diversion of water into irrigation ditches or flooding the land with the diverted water does not, by itself, constitute irrigation for the purpose of establishing beneficial use. *See Hostetler,* 280 N.W.2d at 78 (mere diversion of water into ditch does not constitute beneficial use); *cf.* 43 U.S.C.A. § 390bb(5) (1986) (in Reclamation Act of 1982, irrigation water defined as "water made available for agricultural purposes."). Agriculture is defined as " '[t]he art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops....' " *Koger v. A.T. Woods, Inc.,* 38 N.M. 241, 244, 31 P.2d 255, 256 (1934) (quoting 2 C.J. 988 (1915) (emphasis omitted)). A diversion of water for the purpose of irrigation contemplates that something will be grown. *See Danielson,* 765 P.2d at 575.

◼◼◼ Defendants argue that the use of water to prepare the soil by softening the ground to facilitate subsequent plowing and cultivation constitutes beneficial use of the water. We disagree. For a diversion of water for the purpose of irrigation to constitute beneficial use, the water must be used to irrigate crops within a reasonable time. In an arid region, such as the area in question, where water is a very valuable commodity, simply applying water to the land for many years does not constitute reasonable preparation for cultivation. *McLean,* 62 N.M. at 270, 308 P.2d at 987. For that reason, when water is diverted for agricultural purposes, the vesting of the water right occurs when crops are cultivated and not when preparatory steps are taken in anticipation of cultivation.

◼◼◼ According to the State Engineer, the evidence demonstrated that in 1907 water was beneficially used only on the twenty acres. The State Engineer also argues that no water right could properly vest for the remainder of the land (the sixty-four acres), because there was no evidence of beneficial use of the water on the sixty-four acres until 1948. We agree. The record is devoid of evidence that Defendants applied the water to a beneficial use on the sixty-four acres within a reasonable time following the laying out of the ditches and laterals. Although diversion of water to encourage the growth of native grasses is a beneficial use as Defendants point out, *see State ex rel. Reynolds v. Miranda,* 83 N.M. 443, 445, 493 P.2d 409, 411 (1972), there was no evidence here that water was actually applied or used for this purpose. Thus, we conclude that the district court's finding of beneficial use on the entire tract is not supported by the evidence. The evidence showed only a one-time diversion of water onto the entire tract. There was no evidence that, other than on twenty acres, the land was ever tilled or any crops were ever grown. There was no evidence that all the land was reclaimed so as to be capable of producing crops. Therefore, we conclude that it was

error to find that water was put to beneficial use on the entire tract.

Viewing the record in a light most favorable to the decision reached below, however, we determine that there is evidence that crops were actually grown on twenty acres of the property. Clearly, growing crops constitutes a beneficial use of water. Therefore, with regard to the twenty acres, the district court could properly determine that Defendants proved a priority date of 1907. With regard to the remaining sixty-four acres, we hold that the district court erred in determining that Defendants had established their claim of relation back to 1907, because there was no evidence that water was applied to a beneficial use on that acreage within a reasonable time.

### ABANDONMENT OR FORFEITURE FOR NONUSE

 The State Engineer also asserts that any water rights that were established on the twenty acres in 1907 were either abandoned or forfeited. Because the State Engineer claims abandonment or forfeiture of the water rights, it bore the burden of proof as to that issue. In order to establish a forfeiture, the State Engineer was required to prove that Defendants or their predecessors in title failed to apply the water to the use for which the right vested for a period of four years prior to June 1, 1965. NMSA 1978, § 72–12–8(A) (Cum.Supp.1994). To prove abandonment, the State Engineer must show that the owner relinquished the water rights with the intention to forsake such rights. *State ex rel. Reynolds v. South Springs Co.*, 80 N.M. 144, 146–47, 452 P.2d 478, 480–81 (1969) (citing 2 Clesson S. Kinney, *A Treatise on the Law of Irrigation and Water Rights*, § 1118, at 2020 (2d ed. 1912)). In reviewing this claim, we examine the record to determine whether there was sufficient evidence for the district court to have found that there was no forfeiture and abandonment. We "resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of [the] verdict, and disregard all evidence and inferences to the contrary." *Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984). In carrying out this task, we do not reweigh the evidence; instead, we examine the record to determine whether it supports the result reached by the district court.

In support of his claim of forfeiture, the State Engineer presented evidence that he contends shows that the well was used solely for watering livestock and not for irrigation of crops from 1930 to 1939. The State Engineer also introduced into evidence two deeds, which showed that ownership of the well had been severed from ownership of the land. There was evidence that the water from well was diverted for use in watering livestock. There was also evidence of a 1939 Bureau of Land Management (BLM) Report showing that the well was used for livestock watering. Defendants point out, however, that this report was a BLM Grazing Service Range Survey that was used to describe and report equipment for livestock watering. It was not intended to show whether the well was or was not used for irrigation purposes. There does not appear to have been any evidence showing that the well was used solely for livestock watering in the years 1930 to 1939. Simply because a right to water livestock from the well was given to another fails to conclusively establish that water from the well was not also used for irrigation.

Although the evidence does show that the well was used for watering livestock, it does not follow from such evidence that the water was solely applied to such purpose. Thus, the district court could reasonably conclude that the State Engineer did not carry his burden of proving that the well was not used for irrigation for a period of four years. Hence, the district court could properly find that the State Engineer failed to establish that the water rights applicable to the twenty-acre tract were forfeited.

In an effort to show abandonment of the water rights, the State Engineer presented testimony of Craig, interpreting aerial photographs of Defendants' land taken in 1946 and 1950. Craig's testimony indicated that after examining such photographs he saw no signs of current irrigation, ditches, or canals on Defendants' land in 1946. The witness testified that he saw no ditches, canals, or furrows, and that, even assuming there had

been ditches and canals on the land, it would take about thirty-five to forty years of nonuse for them to disappear. The 1950 aerial photos showed cultivation of the land. On cross-examination, however, Craig acknowledged that he was not familiar with soils and vegetation in Chaves County and that he had based his opinion of nonuse on his observation of ditches in Santa Fe County, where the weather, soil, and vegetation are admittedly different from those in Chaves County.

There was also testimony from Defendants' expert, Atkins, who also interpreted the aerial photos from 1946. Although he agreed that the photographs indicated that there was no cultivation or irrigation of the property in 1946, he believed the photographs showed evidence of past cultivation. Defendants' witness testified that under the conditions in the area, ditches and furrows would be covered over within a relatively short period of time. Atkins also testified that he could not determine by looking at the aerial photographs how long the land had been out of cultivation.

Based on the conflicting testimony interpreting the aerial photographs, the district court could have determined that there was no evidence of abandonment, since it was not clear how long the land had been out of cultivation. In view of this evidence the district court could properly conclude that the State Engineer did not meet his burden of showing that Defendants relinquished their water right with the intent to forsake such right.

The State Engineer further asserts that the district court applied an incorrect standard of proof in this case. The State Engineer contends that the district court did not weigh the evidence and determine the issue of forfeiture under a preponderance of evidence standard. Rather, he contends that the district court ignored overwhelming evidence of forfeiture and abandonment and gave weight to evidence presented by Defendants that sought to rebut the State Engineer's showing. He argues such limited evidence was insufficient to support the district court's determination.

Our review of the record and the district court's findings and conclusions indicate that the district court properly weighed the evidence and determined that the evidence failed to support the State Engineer's claim of forfeiture or abandonment. Thus, we do not believe that the record shows uncontroverted evidence of either forfeiture or abandonment. In fact, the record shows that the evidence was conflicting regarding the lack of beneficial use of the water since 1907 on the twenty-acre tract. Examination of Judge Byrd's findings and conclusions indicates that he clearly considered all of the relevant evidence before reaching his decision on the issue. Because the evidence was conflicting and the State Engineer had the burden of proof on the issues of forfeiture and abandonment, we cannot say that the district court used an incorrect standard of proof, or that its determination is unsupported by substantial evidence.

## CONCLUSION

The determination of a 1907 priority date for well RA–3121 is reversed as to the water rights applicable to the sixty-four-acre tract, and affirmed as to the water rights appurtenant to the twenty-acre tract. The cause is reversed and remanded for entry of an amended order setting a priority date of November 1907 for the water rights applicable to the twenty-acre tract, and a priority date of March 1947 for the water rights appurtenant to the remaining sixty-four acres.

IT IS SO ORDERED.

FLORES and WECHSLER, JJ., concur.