This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41840**

**STATE OF NEW MEXICO ex rel.**
**OFFICE OF THE STATE ENGINEER,**

      Plaintiff-Appellee,

v.

**APODACA CERVANTES, LLC,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James J. Wechsler, District Court Judge**

Office of the State Engineer
A. Nathaniel Chakeres, General Counsel
Sonny Swazo, Special Assistant Attorney General
Brenda Lindlief-Hall
Santa Fe, NM

for Appellee

Cervantes Law Firm, P.C.
K. Joseph Cervantes
Las Cruces, NM

L. Helen Bennett
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Apodaca Cervantes, LLC appeals the district court's subfile order and final judgment, which determined Defendant's surface water and groundwater rights. The subfile order included detailed findings and conclusions in support of its determinations that, as relevant here, Defendant had a surface water right on 73.25 acres of its property, a groundwater right on 69.49 of those acres, and, when exercising the two rights combined, was entitled to use no more than 4.5 acre-feet per acre per year (afay) of water. On appeal, Defendant argues that the district court erred because (1) it should not have placed the burden of proof on Defendant; (2) it "failed to follow" the beneficial use doctrine when it looked at how many acres Defendant actually irrigated in determining Defendant's groundwater right; (3) several of the court's findings were not supported by substantial evidence; and (4) one of the court's conclusions was undermined by a finding. Reviewing each argument in turn, we affirm.

## DISCUSSION

### I. The Burden of Proof

**{2}** The district court, citing *Pecos Valley Artesian Conservancy District v. Peters* (hereinafter *Pecos Valley*), 1948-NMSC-022, ¶¶ 10-12, 52 N.M. 148, 193 P.2d 418, placed the burden on Defendant "to establish the extent of its [combined water] right[s]." Defendant argues that the burden should have been placed on the Office of the State Engineer (OSE) instead because OSE initiated proceedings that sought to change Defendant's combined water rights.[1] Reviewing the issue de novo, *see Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 25, 304 P.3d 409, we conclude the district court correctly placed the burden of proof on Defendant.

**{3}** The district court properly relied on *Pecos Valley*, which places the burden of proving the extent of a water right on the water appropriator. There, the relevant issue was which party bore the burden of proving that there was excess water available for a new water right and for proving the existing water rights in the conservancy district: the plaintiff, which was a conservancy district with existing water users, or the defendant, who sought to appropriate water. *See* 1948-NMSC-022, ¶¶ 7-8. Our Supreme Court recognized the general rule in civil cases that the party asserting an essential fact typically bears the burden of proving that fact, but went on to hold "that the [water] appropriator, *in whatever way the issue may arise*, should have the burden of proving that such excess exists." *Id.* ¶ 10 (emphasis added). But this did "not relieve the . . . [other] appropriators, who [were] already in the field, from the burden of proving the quantity of water that they have been using, and that such amount [was] necessary for their reasonable beneficial purposes." *Id.* ¶¶ 11-12. The upshot was that—regardless of who initiated the litigation—each appropriator or party seeking to appropriate water bore the burden of proving the extent of their own water right. *See id.* ¶ 17. So, under *Pecos*

---

[1]Based on its premise that OSE changed its water rights, Defendant argues for the first time on appeal that it was deprived of procedural due process. Because Defendant did not preserve this issue and has not invoked any of the exceptions to the preservation rule, we do not consider the argument further. *See* Rule 12-321 NMRA; *Moody v. Stribling*, 1999-NMCA-094, ¶ 45, 127 N.M. 630, 985 P.2d 1210 ("Due process claims are not exempt from the fundamental requirement of preservation.").

*Valley*, Defendant bore the burden of proof because Defendant sought to appropriate water; it makes no difference that OSE brought the lawsuit.

**{4}** Defendant argues that it should not have been required to shoulder the burden of proof because it had what it describes as a "vested" or "existing" water right before Defendant was sued by OSE, which brought the proceedings to change that right, and therefore the district court should have placed the burden on OSE. We are not persuaded. OSE never disputed that Defendant had a right to surface water and a right to groundwater; the dispute that precipitated these proceedings was about the extent of those rights, and, as we have explained, under *Pecos Valley*, the water appropriator—here, Defendant—bears the burden of proof on all such issues. The dispute began when OSE provided Defendant an offer of judgment and stipulated subfile order that outlined each element of both rights. *See State ex rel. State Eng'r v. Parker Townsend Ranch Co.*, 1994-NMSC-125, ¶ 5, 118 N.M. 780, 887 P.2d 1247 ("[A] subfile order is an adjudication of water rights as between the state and the applicant." (emphasis omitted)). Defendant did not accept the offer of judgment. Defendant contested only the number of acres for its groundwater right and the amount of water for its combined surface and groundwater rights. The court resolved these issues after a bench trial, and it issued a subfile order adjudicating the extent of Defendant's combined water rights. *See id.* Because Defendant sought to establish the extent of its water rights in the proceedings before the district court, the district court correctly placed the burden of proof on Defendant.

**{5}** We do not believe that the authority relied on by Defendant, *State ex rel. Martinez v. McDermett*, 1995-NMCA-060, ¶ 16, 120 N.M. 327, 901 P.2d 745, supports Defendant's position. In the part of *McDermett* cited by Defendant, the issue was not the extent of an appropriator's water right but instead whether an appropriator had abandoned or forfeited their water right, and this Court concluded that the burden of proof was on the party claiming abandonment and forfeiture, not on the water appropriator. *See id.* That holding does not apply here because OSE has never contended that Defendant abandoned or forfeited its water rights.

**{6}** We note that Defendant does not address the other issues in *McDermett*, which are similar to the issues in the case before us: whether the priority date for the water right in question could relate back to an earlier date and whether the water appropriator put the water to beneficial use. *See id.* ¶¶ 6-15. As to both issues, consistent with *Pecos Valley*, the *McDermett* Court placed the burden of proof on the water appropriator. *See* 1995-NMCA-060, ¶ 7. *McDermett* supports the district court's placement of the burden of proof on Defendant.

## II.  Beneficial Use

**{7}** Defendant argues the court erred in applying the beneficial use doctrine in two interrelated ways: (1) rather than determining Defendant's groundwater right based on Defendant's beneficial use, the court based its decision on "irrigated acres" or "irrigated acreage"; and (2) irrigated acreage was an inadequate analogue to the beneficial use

requirement because it had no "correlation with the volume of water [Defendant] actually put to beneficial use." Instead, Defendant theorizes that its groundwater right should be based on the 73.25 acres that the Elephant Butte Irrigation District (EBID) used for determining Defendant's surface water right. Reviewing the issues de novo, *see State Eng'r of N.M. v. Diamond K Bar Ranch, LLC*, 2016-NMSC-036, ¶ 12, 385 P.3d 626, we perceive no error.

{8}     "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3. To determine beneficial use, a court looks to the "actual use" of the water for a beneficial purpose. *McDermett*, 1995-NMCA-060, ¶ 10. Critically here, when it comes to irrigation, "to constitute beneficial use, the water must be used to irrigate crops"; it is not enough that the appropriator merely diverts the water, constructs irrigation ditches on their property, or floods their land. *See id.* ¶¶ 12-13, 15. This basic rule of water law is the foundation for the following provision in the settlement agreement in the Lower Rio Grande adjudication, which governs Defendant's water rights: combined water rights must be determined based on "that acreage irrigated with combined surface water . . . and groundwater."

{9}     We conclude the beneficial use requirement described in *McDermett* and reflected in the Lower Rio Grande adjudication was followed by the district court in this case. In its order, the district court used the term "irrigated acreage" and "irrigated acres" as shorthand for acres on which Defendant actually used water to irrigate crops. In a part of the order in which the court described the applicable law, under a heading of "Irrigated Acreage," the court accurately outlined the beneficial use doctrine and concluded that "[a]n analysis that considers the surface area to which groundwater is applied is consistent with the principle of beneficial use of water and is reasonable to determine the areas of a farm that are irrigated acreage for groundwater rights." The court then made findings, again under a heading of "Irrigated Acreage." There, it discussed in detail the evidence and methods provided by both parties relevant to the determination of the number of acres on which Defendant actually used water to irrigate crops. OSE suggested the court look to where water was placed on the surface of the ground to grow crops. Defendant suggested that the court look to the entire root zone of the crops. Persuaded by OSE's evidence, the district court concluded that Defendant used its groundwater to irrigate crops on 69.49 acres. In sum, we see no error in the court's use of "irrigated acreage" because its analysis aligns with the requirements of beneficial use for irrigation purposes as outlined both in precedent, *see McDermett*, 1995-NMCA-060, ¶¶ 10, 13, and the applicable water system's adjudication.[2]

{10}    This takes us to Defendant's next contention: that the court's use of irrigated acreage—which, according to Defendant, lacked a "reference to the farming needs of the plants being irrigated"—was "not . . . consistent" with the beneficial use doctrine because it did not "have any correlation with the volume of water [Defendant] actually put to 'beneficial use.'" We are unpersuaded. Although we agree with Defendant that

---

[2]Defendant also argues that the court's finding of fact number 46 was based on a "fallacy" because the court equated beneficial use with irrigated acreage. Because we conclude the court did not misapply the beneficial use requirement, we also see no error in this finding.

the court did not discuss the volume of water Defendant was entitled to use in the "Irrigated Acreage" sections of its order, we perceive no error in the district court's analysis. Critically, Defendant presents no authority that all aspects of beneficial use must be proven under a single, uniform analysis. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). And the court separately determined the amount of water needed to exercise the combined rights in two other sections of its order, each titled "FDR" (Farm Delivery Requirement). In these sections, it discussed how the Lower Rio Grande adjudication predetermined that 4.5 afay per appropriator was the presumptive amount of water for all combined rights. The district court recognized that, pursuant to the larger adjudication, appropriators could increase that amount up to 5.5 afay if they could demonstrate they beneficially used more than the predetermined amount. Defendant attempted to do so, relying exclusively on the testimony of its managing partner, Orlando Dino Cervantes. But the court gave little-to-no weight to this part of his testimony because he was not an expert, he did not testify to his personal knowledge, and Defendant did not provide corroborating evidence. The court therefore concluded that Defendant did not prove it was entitled to more than the predetermined amount of 4.5 afay. This was a straightforward application of the law to the evidence presented by the parties, and we do not believe it was the result of any legal error.

### III.     Challenged Findings

**{11}**    As we understand Defendant's briefs, it argues that the court's determination that only 69.49 acres were actually irrigated "cannot be sustained" because findings of fact number 47 and number 50 are not supported by substantial evidence. We disagree.

**{12}**    "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *N.M. Mil. Inst. v. NMMI Alumni Ass'n, Inc.*, 2019-NMCA-008, ¶ 19, 458 P.3d 434 (internal quotation marks and citation omitted). "The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding." *Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207. In this review, "we do not reweigh the evidence" and, if "there is a conflict in the testimony, we defer to the trier of fact." *Id.* (internal quotation marks and citation omitted).

**{13}**    Because the two findings attacked by Defendant pertain to the district court's finding that Defendant's groundwater right applied to 69.49 acres, we begin by explaining why we believe that finding is supported by substantial evidence. The district court relied on the analysis and testimony of Christopher Whitman, OSE's expert. Mr. Whitman performed a "hydrographic survey analysis" in which he first looked at a hydrographic survey developed by OSE that determined that 70.96 acres of the property were irrigated. He testified that the survey "incorrectly" included 1.36 acres from an adjoining farm. Mr. Whitman also identified other features on the property that were not irrigated, such as the permanent structures, high ground, roads, and ditches. He then combined all of the unirrigated features together and subtracted that sum from

the corrected total of irrigated acreage in the hydrographic survey, concluding that 69.49 acres were actually irrigated. This testimony is substantial evidence supporting the district court's finding that 69.49 acres of land were put to beneficial use through crop irrigation. *See Autrey*, 2022-NMCA-042, ¶ 9.

{14}    In making this finding, the district court resolved a conflict in the testimony and weighed the evidence, and we therefore must defer to the district court. Defendant asks us resolve a conflict between the methodology offered by OSE and the methodology offered by Defendant and to reweigh the evidence,[3] but precedent prohibits us from doing both. *See id.* ("When there is a conflict in the testimony, we defer to the trier of fact." (text only) (citation omitted)); *Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 6, 111 N.M. 410, 806 P.2d 59 ("Our purpose on appeal is . . . to correct an erroneous result, not reweigh the evidence." (citation omitted)). As mentioned previously, Defendant proposed a different method to determine the irrigated acreage. Exclusively relying on the testimony of Mr. Cervantes, Defendant argued that the irrigated acreage should be determined by the "replacement of water to the soil consumed by the root zone of a plant." Mr. Cervantes testified generally that "[t]here's a lot of water activity that's going [on] underground" because roots go toward water regardless of whether there is, for example, a berm "built up to block water," higher elevation, or a structure. But Defendant did not provide any specific evidence that more than 69.49 acres on the property were actually irrigated. In fact, Mr. Cervantes testified, and the court found that, "[t]here's no way" to determine irrigated acreage as defined by Defendant "from [an] aerial assessment or even, for that matter, [to] review it on the farm." Finding that Defendant's method was unsound, the court relied on OSE's method, and we will not second-guess the district court's determination. *See Autrey*, 2022-NMCA-042, ¶ 9 ("When there is a conflict in the testimony, we defer to the trier of fact." (text only) (citation omitted)). The findings Defendant challenges on appeal—findings 47 and 50— relate to Mr. Whitman's analytical process; both findings accurately reflect the testimony of OSE's expert, and whether to accept that testimony as credible was a question for the district court to answer. *See Mascarenas*, 1991-NMSC-014, ¶ 6 ("[O]nly the trier of facts may weigh the testimony[ and] determine the credibility of witnesses.").

## IV.    Challenged Conclusion

{15}    Finally, Defendant argues that the court's conclusion of law number 28—that Defendant's "claim that all its 73.25 EBID assessed acres constitute its irrigated acreage for groundwater fails because the assessed acreage amount encompasses unirrigated acreage that includes permanent structures such as a house"—was undermined by finding 59, that "[t]here [was] no evidence quantifying the acreage covered by any permanent structure on the [property]." We are unpersuaded.

---

[3]Defendant also argues that the testimony supporting finding of fact number 50 was based on irrelevant and inadmissible expert testimony. However, Defendant did not preserve this issue by challenging the admissibility of this evidence in the district court, and Defendant has not argued that any exception to the preservation rule applies. See Rule 12-321. We therefore decline to address the issue further.

**{16}** "When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary." *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 1991-NMSC-097, ¶ 8, 113 N.M. 9, 820 P.2d 1323. Although there is no evidence in the record that establishes the precise size of the permanent structures, there is evidence that there were structures on the property, and it is reasonable to infer that those structures took up some amount of space. *See id.* Further, Defendant does not challenge the court's conclusion that "[i]t is not reasonable to consider areas with permanent structures to be irrigated acreage or acreage upon which water is put to beneficial use." Tying this together, there were permanent structures on some part of those 73.25 acres that took up some space—space that went unirrigated. Thus, the district court did not err by concluding that those acres, along with other acres that were not actually irrigated, should not be included in the calculation, and that Defendant therefore failed to demonstrate all 73.25 acres were irrigated.

**CONCLUSION**

**{17}** We affirm.

**{18}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JENNIFER L. ATTREP, Judge**