The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **October 18, 2023**

**No. A-1-CA-39378 and No. A-1-CA-40372**
**(consolidated for purpose of opinion)**

**CARLSBAD IRRIGATION DISTRICT**
**and OTIS MUTUAL DOMESTIC WATER**
**CONSUMERS & SEWAGE WORKS**
**ASSOCIATION,**

      Petitioners-Appellees,

v.

**JOHN D'ANTONIO, NEW MEXICO**
**STATE ENGINEER,**

      Respondent-Appellee,

and

**INTREPID POTASH -- NEW MEXICO,**
**LLC; SELECT ENERGY SERVICES, LLC;**
**HENRY MCDONALD; and INTREPID**
**POTASH, INC.,**

      Movants-in-Intervention-Appellants.

**APPEALS FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Court Judge**

**consolidated with**

**STATE OF NEW MEXICO ex rel. OFFICE OF THE STATE ENGINEER; NEW MEXICO INTERSTATE STREAM COMMISSION; PECOS VALLEY ARTESIAN CONSERVANCY DISTRICT; CARLSBAD IRRIGATION DISTRICT; OTIS MUTUAL DOMESTIC WATER CONSUMERS & SEWAGE WORK ASSOCIATION; FORT SUMNER IRRIGATION DISTRICT; CITY OF ROSWELL; EOG; and "YATES ENTITIES,"**

 Plaintiffs-Appellees,

v.

**INTREPID POTASH, INC. and INTREPID POTASH-NEW MEXICO, LLC,**

 Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James J. Wechsler, District Court Judge, Pro Tempore**

Martin, Dugan & Martin
Kenneth D. Dugan
W.T. Martin, Jr.
Carlsbad, NM

for Petitioners-Appellees (No. A-1-CA-39378)

A. Nathaniel Chakeres, General Counsel, Special Assistant Attorney General
Richard A. Allen, Deputy General Counsel, Special Assistant Attorney General
Simi Jain, Managing Attorney, Special Assistant Attorney General
Richard O'Neal, Attorney, Special Assistant Attorney General
Santa Fe, NM

L. Christopher Lindeen Attorney at Law LLC
L. Christopher Lindeen
Santa Fe, NM

for Respondent-Appellee (No. A-1-CA-39378)

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

Law & Resource Planning Associates
Charles T. DuMars
Tanya L. Scott
Lacy A. Daniel
Albuquerque, NM

for Appellants Intrepid Potash-New Mexico, LLC and Intrepid Potash, Inc. (No. A-1-CA-39378)

Taylor & McCaleb, P.A.
Elizabeth Newlin Taylor
Jolene L. McCaleb
Corrales, NM

for Appellant Select Energy Services, LLC (No. A-1-CA-39378)

Tabor & Byers, LLP
Cas Tabor
Carlsbad, NM

for Appellant Henry McDonald (No. A-1-CA-39378)

A. Nathaniel Chakeres, General Counsel, Special Assistant Attorney General
Richard A. Allen, Deputy General Counsel, Special Assistant Attorney General
Kelly Brooks Smith, Deputy General Counsel, Special Assistant Attorney General
Edward Bagley, Managing Attorney, Special Assistant Attorney General
Paul Bossert, Special Assistant Attorney General
Patricia Estrella, Special Assistant Attorney General
Owen Kellum, Special Assistant Attorney General
Santa Fe, NM

Ann M. Carter, Special Assistant Attorney General
Santa Fe, NM

L. Christopher Lindeen Attorney at Law LLC
L. Christopher Lindeen, Special Assistant Attorney General
Santa Fe, NM

for Appellee New Mexico State Engineer (No. A-1-CA-40372)

Christopher D. Shaw
Nicholas R. Rossi
Santa Fe, NM

Stein & Brockmann, PA
Jay F. Stein
Santa Fe, NM

for Appellee New Mexico Interstate Stream Commission

Hennighausen & Olsen
A.J. Olsen
Roswell, NM

for Appellee Pecos Valley Artesian Conservancy District

Martin, Dugan & Martin
Kenneth D. Dugan
W.T. Martin, Jr.
Carlsbad, NM

for Plaintiffs-Appellees Carlsbad Irrigation District and Otis Mutual Domestic Water Consumers and Sewage Work Association (No. A-1-CA-40372)

Utton & Kery, P.A.
John Utton
Santa Fe, NM

for Appellee Fort Sumner Irrigation District

Lucas Williams
Drew Cloutier
Roswell, NM

for Appellees City of Roswell and Yates Entities

Law & Resource Planning Associates
Charles T. DuMars
Tanya L. Scott
Lacy A. Daniel
Albuquerque, NM

Peifer, Hanson, Mullins & Baker, P.A.
Charles R. Peifer
Mark T. Baker
Matthew E. Jackson
Albuquerque, NM

for Appellants Intrepid Potash, Inc. and Intrepid Potash-New Mexico, LLC (No. A-1-CA-40372)

**OPINION**

**BOGARDUS, Judge.**

{1}  This opinion consolidates two appeals—*State ex rel. Office of the State Engineer v. Intrepid Potash, Inc.*, A-1-CA-40372 (Case 1) and *Carlsbad Irrigation District v. D'Antonio*, A-1-CA-39378 (Case 2)—which stem from the same underlying proceedings, involve various of the same parties, and the conclusion of Case 1 moots the issue presented in Case 2. *See* Rule 12-317(B) NMRA (providing appellate courts the discretion to consolidate appeals). Appellants Intrepid Potash, Inc., and Intrepid Potash-New Mexico, LLC are the parties appealing in both cases. The New Mexico Office of the State Engineer (OSE), the New Mexico Interstate Stream Commission (ISC), Pecos Valley Artesian Conservancy District, Otis Mutual Domestic Water Consumers and Sewage Works Association, Fort Sumner Irrigation District, City of Roswell, EOG, and Yates Entities filed objections to the relevant proceeding in Case 1, and this opinion refers to them collectively as Appellees. In Case 2, Carlsbad Irrigation District and Otis Mutual Domestic Water Consumers & Sewage Works Association protested Appellants' relevant application; this opinion refers to these two parties as it relates to Case 2 as Objectors. We affirm the district court's conclusion in Case 1 that Appellants lost the pertinent water rights; accordingly, Appellants did not possess any water rights interest to protect in Case 2—mooting that issue.

{2} Case 1 arises from an expedited inter se proceeding to adjudicate water rights claims under Rule 1-071.2(B) NMRA. After a full trial, the district court concluded that Appellants, through their predecessors, forfeited all Pecos River water rights in excess of 5,813.6 acre-feet per year and abandoned all but 150 acre-feet per year of the remaining water rights. Appellants argue that the district court (1) deprived Appellants of due process in adjudicating its water rights forfeited under NMSA 1953, Section 75-5-26 (1941, amended 1967, Vol. 11, 1967 Pocket Supp.) (the pre-1965 forfeiture statute); (2) erred in concluding that Appellants forfeited the water rights; and (3) inappropriately held that Appellants abandoned the remaining water rights deemed lost to them. We reject Appellants' arguments and affirm the district court.

{3} In Case 2, Appellants appeal the district court's denial of their joint motion to intervene and their subsequent motion for reconsideration in the writ of mandamus action filed by Objectors against John D'Antonio, the New Mexico State Engineer. Appellants argue that the district court erred in denying their joint motion to intervene because the mandamus action threatened their water rights interest. However, because we affirm the district court's conclusion in Case 1 that Appellants forfeited or abandoned the pertinent water rights, the issue of whether the district court erred in denying Appellants' motion to intervene is moot and we decline to address it. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022,

¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions."). Thus, we dismiss the issue presented in Case 2.

**BACKGROUND**

{4}     These consolidated appeals arise from Appellants' attempt to modify the point of diversion of water rights that had been dormant for decades. We first provide a factual background of the events leading to the district court's conclusion that Appellants forfeited or abandoned all but 150 acre-feet per year of their water rights. Next, we provide the procedural background that underpins the district court's denial of Appellants' motion to intervene.

**Factual Background**

{5}     Beginning in 1931, Appellants developed an operation to mine and refine potash in Southeastern New Mexico. As part of the operation, Appellants completed a refinery in Loving, New Mexico (the Loving Refinery) and began acquiring water rights. In total, the OSE granted Appellants approximately 34,315 acre-feet per year of water rights in the Pecos River for nonconsumptive use and 19,836 acre-feet per year for consumptive use. The granted water rights appropriated Pecos River water from the same diversion point, Harroun Dam into the Harroun Canal, and for the same beneficial use, industrial use at the Loving Refinery.

{6}     The Loving Refinery used a crystallization process that involved the separation of potassium crystal by heating of the ore. Appellants used the Pecos

3

River water to cool the heated ore and to sluice undissolved salts to the Laguna Grande for disposal. The water used to cool the ore was substantially for nonconsumptive use because it returned to the Harroun Canal or the Pecos River. Conversely, the water used to sluice undissolved salts was for consumptive use, as the Laguna Grande had no outlet to return the water. In 1948, Appellants installed cooling towers at the Loving Refinery, which enabled the recirculation of cooling water and obviated the need to use Pecos River water for cooling. Thereafter, essentially 100 percent of the water diverted into the Loving Refinery was consumptively used.

{7} In 1958, the potash industry experienced economic difficulties with overproduction, increased costs, increased foreign competition, and lower prices. Nevertheless, Appellants experienced peak production and made significant investments in their operations during the late 1950s and early 1960s. The Loving Refinery's improvement and expansion did not significantly increase water demand; instead, water use directly corresponded to the level of production.

{8} As Appellants' production steadily increased, they continued to consumptively use water to sluice undissolved salts. The maximum water Appellants consumed was 5,813.6 acre-feet in 1963. The surface water in the Pecos River was sufficient to supply that amount in times of drought. Even during general declines in available surface water supply, the Loving Refinery's operations were not

4

constrained. Furthermore, because Appellants had sufficient water to meet their demands, Appellants did not have the need to use the approved storage or supplemental wells as a means to alleviate any variability in water supply. Appellants' location upstream and the lack of priority calls from downstream irrigators allowed Appellants to divert all the water they needed. Ultimately, Appellants had the right to use all the water flowing in the Harroun Canal.

{9} By the late 1950s, the grade of the ore mined by Appellants began to decline, even as production increased. This lower grade ore required higher quality water to process; leading to Appellants filing an application with the OSE for a permit to drill wells in the Ogallala Aquifer shallow water basin in the Lea County Basin (Caprock). The OSE appropriated 3,500 acre-feet per year of Caprock water rights that Appellants used in a new flotation refinery intended to process the lower-grade ore. Appellants, however, could have used the original Pecos River water at the new refinery, but decided to forgo the costs associated with such use and opted to rely on Caprock water. Over time, continuing operations in the Loving Refinery at the same time Appellants were expanding the new refinery became uneconomical. In 1973, Appellants decided to shut down the Loving Refinery, and dismantled it. Caprock water replaced all need and use of the Pecos River water.

{10} Appellants understood that their water rights would be subject to forfeiture if they were not put to beneficial use. Consequently, Appellants discussed transfer of

the water rights with multiple entities, but ultimately only reached one agreement. The sole agreement was to allow the United Salt Corporation to divert up to 150 acre-feet per year from the Pecos River. In 1978, Appellants began filing applications for extensions of time to put the water rights to beneficial use, referencing insufficient water availability as the reason for seeking the extensions. Appellants received twenty-five extensions of time to put the water to beneficial use from 1978 through 2017. The extensions of time did not include the amount of the water rights for which an extension was granted, did not include a finding that the extensions were made in public interest, and were not statements as to the viability of the water rights. Appellants continued referencing the lack of sufficient water to satisfy their needs as the reason for the extensions. At that point, however, Appellants did not have the ability to put the water rights to beneficial use because they had dismantled the Loving Refinery.

{11} In 1991, the OSE informed Appellants that "no further extension of time will be granted unless a diligent effort has been made to apply water to beneficial use." The following year OSE granted the extension only because Appellants began water rights assignment negotiations with the ISC. In 1995, Appellants and the ISC entered into a cooperative water conservation agreement through December 31, 2001. Appellants assigned their Pecos River water rights, except the 150 acre-feet per year delivered to United Salt Corporation, to the ISC. The agreement, however, was not

for the beneficial use of the water rights because it was for the continued nonuse of water. ISC entered into the agreement because Appellants' assignment "could provide reasonable assurance that the water rights will not be used in the near future, which if use were resumed, would negatively impact the effects of rights acquired elsewhere." ISC paid a nominal amount of approximately 7 cents per acre-foot knowing that Appellants were not exercising their water rights. For the same reasons, ISC declined to acknowledge the validity of Appellants' water rights or to renew the agreement when it expired.

{12}     In 2001, the ISC formed the ad hoc Pecos River Basin Committee—which included Appellants—to develop collaborative solutions between water users to ensure long-term compliance with the Pecos River Compact. The committee held meetings with representatives from various water user groups, resulting in the 2003 Pecos Settlement Agreement (the Settlement Agreement). In 2003, the ISC issued its Pecos River Adjudication Settlement Negotiations: Model Evaluation of Proposed Settlement Terms—Final Report (the Final Report). The Final Report noted that the Settlement Agreement did not include diversion for Appellants because their water rights were unused and a continued zero diversion was assumed. The Settlement Agreement was incorporated into the partial final decree in *State ex rel. Office of State Engineer v. Lewis*, 2007-NMCA-008, 141 N.M. 1, 150 P.3d 375. The *Lewis* court provided Appellants notice and the opportunity to object to the

7

Settlement Agreement or the partial final decree; Appellants did not object. *Id.* ¶¶ 15-16.

{13} Beginning in 2016, Appellants made improvements to the diversion infrastructure and filed applications to change the purpose of use for some of the water rights—these applications are discussed in detail in the procedural background below. Multiple parties protested the applications, triggering an administrative hearing before the OSE. On February 20, 2019, while discovery was underway, some parties to the administrative proceeding filed a complaint in district court seeking an expedited inter se adjudication of Appellants' claimed water rights. The parties agreed to the expedited inter se adjudication and a stay in the administrative proceeding. The scope of the inter se proceeding was set to be the "issue of whether any of [Appellants' w]ater [r]ights [c]laims have been lost to forfeiture or abandonment."

{14} Trial for the inter se proceeding took place December 8 through 18, 2020. On August 17, 2021, the district court issued its findings of fact and conclusions of law. On September 17, 2021, before the district court had entered a partial final judgment in this matter, this Court issued its decision in *State ex rel. Office of State Engineer v. Elephant Butte Irrigation District*, 2021-NMCA-066, 499 P.3d 690 (hereinafter *Gray*). On September 27, 2021, the district court invited the parties to file supplemental briefs "addressing the impact of *Gray* on [its previously issued

f]indings of [f]act[] and [c]onclusions of [l]aw." After the parties filed their supplemental briefs, the district court issued amended findings of fact and conclusions of law on December 17, 2021, determining that Appellants forfeited or abandoned all water rights except 150 acre-feet per year. The first appeal followed.

**Procedural Background**

{15}    As mentioned above, in 2017 Appellants filed seven applications to change the point of diversion along with the place and purpose of use for 6,883 acre-feet per year of water rights. Pending the final determination of the applications, the OSE granted Appellants a preliminary authorization to use the water rights at the proposed move-to location for the purposes requested. After the preliminary authorizations, Appellants published notice of the applications and Objectors protested each application. Objectors further filed a petition for alternative and peremptory writs of mandamus seeking that the OSE suspend or cancel the preliminary authorizations.

{16}    The petition for writ of mandamus included only the OSE as a defendant, excluding Appellants. Consequently, Appellants filed a joint motion to intervene in the proceeding, which the district court denied. Thereafter, the district court issued the peremptory writ of mandamus, requiring the OSE to withdraw and cancel the preliminary authorizations. Appellants timely appealed the denial of their joint motion to intervene and the OSE appealed the peremptory writ of mandamus.

Further, the parties petitioned for a writ of superintending control to our Supreme Court on both issues. This Court and our Supreme Court consolidated the cases.

{17} This Court certified the parties' appeals to our Supreme Court. Moreover, our Supreme Court stayed further proceedings for the corresponding cases in this Court, pending the disposition of the petitions for writ of superintending control. While the petitions for writ of superintending control were pending, partial judgment in the expedited inter se proceeding discussed above was entered, which declared Appellants' water rights to have been forfeited and abandoned. Accordingly, our Supreme Court declared that the district court's forfeiture and abandonment adjudication of Appellants' water rights "render[ed] the requests for extraordinary relief in these consolidated proceedings functionally moot." Our Supreme Court denied the writs for superintending control and lifted the stay for the corresponding cases in this Court.

{18} Returning to this Court, the parties stipulated to dismiss the OSE's appeal and Objectors filed a motion to dismiss Appellants' appeal based on mootness and/or standing. This Court ordered that Objectors' motion to dismiss be held in abeyance pending full briefing on the issues. We now consider the arguments.

## DISCUSSION

## I. The District Court Did Not Deprive Appellants of Due Process

{19} "Claims involving the denial of procedural due process are questions of law, which we review de novo." *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 10, 136 N.M. 217, 96 P.3d 778. Appellants argue that the district court's forfeiture adjudication under the pre-1965 statute violated their due process rights because the statute does not provide a notice or opportunity to be heard, and the time between the purported forfeiture and the trial was too long to provide a "meaningful opportunity to be heard." Appellees respond that the complaint and motion put Appellants on notice, and that the trial afforded Appellants sufficient opportunity to be heard.[1] We agree with Appellees and explain.

{20} We begin by providing a brief discussion on the law of forfeiture, which is a penalty for the failure of a water owner to put the water to beneficial use. *State ex rel. Off. of State Eng'r v. Romero*, 2022-NMSC-022, ¶ 21, 521 P.3d 56. Before 1965,

---

[1]Appellees further argue that Appellants failed to preserve the due process issue. Appellants, however, invoked a ruling on the due process claim in their requested findings of fact and conclusions of law, and the closing brief. *See In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 10 134 N.M. 516, 80 P.3d 98 (holding that a party's submission of findings of fact and conclusions of law to the trial court was sufficient for preservation). Accordingly, Appellants' due process is preserved. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

the forfeiture statute provided that water rights that had not been beneficially used for a period of four years would be forfeited as an operation of law. Section 75-5-26 (1941). In 1965, the Legislature amended the statute to require the OSE to provide a notice and a declaration of nonuse one year before a forfeiture adjudication. NMSA 1953, § 75-11-8(A) (1965, amended 1967, Vol. 11, 1967 Pocket Supp.). This one-year notice requirement, however, does "not apply to water which has reverted to the public by operation of law prior to June 1, 1965." *Id.* Accordingly, we must consider whether the district court violated Appellants' due process rights by concluding that Appellants forfeited its water rights decades ago under the pre-1965 statute that does not require notice.

{21} Similar to the Fourteenth Amendment of the United States Constitution, Article II, Section 18 of the New Mexico Constitution states that "no person shall be deprived of life, liberty or property without due process of law." The present case implicates procedural due process, which "requires the government to give notice and an opportunity to be heard before depriving an individual of liberty or property." *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 50, 306 P.3d 457 (alteration, internal quotation marks, and citation omitted). "[A] property interest in an adjudicated water right would be entitled to due process protections, if subjected to deprivation." *Id.* ¶ 51. Therefore, we must consider "how much process is due to avoid an erroneous deprivation, given the varying interests of the parties and the

particular procedures used." *See Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 18, 140 N.M. 136, 140 P.3d 1085. There are three factors to consider in determining what procedures are required:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 23, 118 N.M. 470, 882 P.2d 511 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Balancing these factors, we conclude that Appellants fail to persuade us that the expedited inter se proceeding was insufficient to afford Appellants due process. *See Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 ("On appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (internal quotation marks and citation omitted)).

{22}     The procedure used properly safeguarded the vested water rights, which are Appellants' protected property rights. *See Walker v. United States*, 2007-NMSC-038, ¶ 27, 142 N.M. 45, 162 P.3d 882 (asserting that a vested water right is a "separate protected property right"). An expedited inter se proceeding "allows a final determination of water rights to be made prior to the general inter se phase of the

13

general adjudication." *Gray*, 2021-NMCA-066, ¶ 3. Rule 1-071.2(B) governs expedited inter se proceedings and requires that all claimants of the water rights be given notice. The intricate nature of inter se water cases can lead to flexibility in the limits of due process. *See State ex rel. State Eng'r v. United States*, 2018-NMCA-053, ¶ 37, 425 P.3d 723 ("As this case illustrates, inter se water cases can involve thousands of potential claimants, and the limits of due process notice therefore require flexibility in this context."); *see also Harrell*, 1994-NMSC-096, ¶ 23 ("Due process considerations are flexible; the circumstances of the case determine the requirements."). "The New Mexico statutory inter se water procedure is specifically designed to allow the [OSE] to fairly allocate water to all users of a particular stream." *State ex rel. State Eng'r*, 2018-NMCA-053, ¶ 34. This allocation must be premised on the underlying principles of New Mexico water law.

{23} In New Mexico, water rights are both established and exercised by beneficial use, which forms "the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3; *State ex rel. Off. of State Eng'r v. United States*, 2013-NMCA-023, ¶ 20, 296 P.3d 1217. "[F]orfeiture is an essential enforcement mechanism for Article XVI's beneficial use provision." *Romero*, 2022-NMSC-022, ¶ 14. This enforcement mechanism requires the adjudicator to consider the retrospective use of water rights and determine whether the water owner failed to beneficially use the water for four consecutive years. This retrospective process

14

advances the policy of our constitution and statutes promoting that "the waters [of New Mexico are] made to do the greatest good to the greatest number. This [concept rests] on the theory that the continuance of the title to a water right is based upon continuing beneficial use." *State ex rel. Reynolds v. S. Springs Co.*, 1969-NMSC-023, ¶ 9, 80 N.M. 144, 452 P.2d 478. Accordingly, the government's interest in adjudicating water rights is substantial. *See Harrell*, 1994-NMSC-096, ¶ 23 (listing the government interest as a factor to determine whether a plaintiff's due process rights have been violated).

{24} Appellants contend that forfeiture adjudications under the pre-1965 statute may lead to difficulty gathering evidence for trial due to the passage of time and that a more timely proceeding is required to reduce the risk of erroneous deprivation. Appellants, however, identify no additional or substitute procedural safeguards that would permit retrospective enforcement of the pre-1965 forfeiture statute as the Legislature intended. *See* NMSA 1978, § 72-12-8(A) (2002) (prescribing that the one-year notice requirement, however, does "not apply to water that has reverted to the public by operation of law prior to June 1, 1965"); *see also Harrell*, 1994-NMSC-096, ¶ 23 (listing the "probable value, if any, of additional or substitute procedural safeguards" as a factor to determine if a plaintiff's due process rights have been violated (internal quotation marks and citation omitted)).

15

{25} Moreover, the procedures delineated in current statutes and regulations afford sufficient due process. NMSA 1978, Section 72-4-17 (1965), provides a process for the determination of water rights and requires all claimants to the water rights be made parties to the suit. As discussed above, Rule 1-071.2(B) allows the courts to conduct these water rights suits as expedited inter se proceedings and requires that all parties be given notice of the proceeding. In this case, Appellants agreed to the expedited inter se proceeding after notice was provided pursuant to the rule. Further, the district court provided Appellants an opportunity to be heard by allowing Appellants to proffer evidence regarding its use of the water rights. Appellants fail to argue that there is a risk of an erroneous deprivation of its water rights after the trial—admitting "it is difficult to determine what evidence might have been available to defend"—and thus fail to demonstrate that there is a reasonable likelihood that the outcome might have been different with additional evidence. *See State v. Neal*, 2007-NMCA-086, ¶ 42, 142 N.M. 487, 167 P.3d 935 ("[I]n order to establish a violation of due process, a [party] must show prejudice."). Accordingly, we conclude that although water rights are a private interest that may be affected by official action, there are no additional or substitute procedural safeguards to enforce the pre-1965 forfeiture state, the government's interest in upholding the constitutionality of the proceeding is substantial, and Appellants fail to demonstrate a risk of erroneous deprivation. *See Harrell*, 1994-NMSC-096, ¶ 23.

{26} Furthermore, we decline Appellants' invitation to "follow *Sturgeon* [*v. Brooks*, 281 P.2d 675 (Wyo. 1955)] and [to conclude] that a forfeiture action must be timely, particularly where, as here, a party seeking forfeiture knew of the water rights at issue." In *Sturgeon*, the Wyoming Supreme Court held that the defendant had not forfeited the water rights to a reservoir that the defendant had not used for fifteen years, despite Wyoming's forfeiture statute requiring that after five years of nonbeneficial use water rights shall be considered abandoned and forfeited. 281 P.2d at 683-85. We disagree with Appellants' reliance on *Sturgeon* for several reasons.

{27} The *Sturgeon* court did not consider due process in its analysis, *see id.*, the Wyoming law operated differently, *see id.* at 683, and the Wyoming court focused not on the passage of time but on whether public policy required the court to construe the forfeiture statute to deprive the defendant of its water rights. *See id.* at 685. The *Sturgeon* court also considered the defendant's significant post-abandonment investment in the water rights and the plaintiff's explicit recognition of the defendant's rights. *See id.* at 684 (acknowledging that "if the action for forfeiture had been brought before [the defendant] put the reservoir again into use, the court would have been justified, if not constrained, to declare a forfeiture" and highlighting that the plaintiff "acknowledged, recognized and acquiesced in the fact that [the defendant] owned the reservoir and the prior rights therein"). Based on these facts, the court concluded that it would be "difficult to perceive that [the defendant]

would be dealt with equitably by now holding that his [water] rights were forfeited." *Id.*

**{28}** Appellants contend that the two cases are similarly situated by the long delays and the knowledge by the party seeking the forfeiture that the water user might lay claim to the water rights. However, the delay was only a corollary fact in *Sturgeon*'s analysis instead of a determinative factor and the general knowledge that a party may lay claim to water rights is not equivalent to the "acknowledged" and "recognized" acquiescence to the ownership of water rights that was present in *Sturgeon*. *See id.* Accordingly, we do not find *Sturgeon* instructive.

**{29}** Similarly, Appellants' reliance on *State v. Henry Don S.*, 1990-NMCA-029, ¶ 5, 109 N.M. 777, 790 P.2d 1058, to argue that "this Court has held that self-executing penal provisions violate due process" is inappropriate. Appellants suggest that the self-executing penal provision in *Henry Don S.* is similar to the pre-1965 forfeiture statute because "forfeiture is punitive or penal in nature." The *Henry Don S.* Court, however, invalidated the self-executing provision because the provision circumvented statutory procedural requirements. *See id.* ¶ 6. *Henry Don S.* does not discuss due process and is therefore not relevant to our analysis.

**{30}** Considering due process requirements, New Mexico's principles of water law, the expedited inter se proceeding, and the parties' arguments, we conclude that the district court did not deprive Appellants of their due process rights.

## II.    The District Court Did Not Err in Its Forfeiture Adjudication

{31}    We review the district court's determination that Appellants forfeited their water rights for substantial evidence. *See State ex rel. Martinez v. McDermett*, 1995-NMCA-060, ¶ 16, 120 N.M. 327, 901 P.2d 745 (examining the record "to determine whether there was sufficient evidence for the district court to have found that there was no forfeiture and abandonment"). Appellants argue that the district court "failed to apply the clear and convincing evidentiary standard in determining forfeiture" and therefore the "conclusion was in error." Appellees provide two responses to Appellants' argument: first, "[t]he burden of proof for forfeiture cases has always been a preponderance of the evidence," and second, the evidence supporting the forfeiture ruling was sufficient under both a preponderance and a clear and convincing standard. We ultimately agree with Appellees' second response—applying the substantial evidence standard of review, the evidence is sufficient to satisfy either a preponderance or clear and convincing evidence burden.

{32}    The pre-1965 forfeiture statute prescribed that if a water rights owner failed to beneficially use all or any part of the water for a period of four years, the unused water reverted back to the public. Section 75-5-26 (1941). "Provided, however, that forfeiture shall not necessarily occur if circumstances beyond the control of the owner have caused nonuse." *Id.*

{33} The district court concluded that "[b]y 1953, and no later than 1964, all nonconsumptive water rights issued to [Appellants'] predecessors were forfeited by operation of law" and that "[a]ll of [Appellants'] Pecos River water rights in excess of 5,813.6 [acre-feet per year] were forfeited by operation of law after 1963." Resolving all disputed facts in favor of Appellees, indulging all reasonable inferences in support of the district court's decision, and disregarding all evidence and inferences to the contrary, we hold that there is substantial evidence to support forfeiture. *See McDermett*, 1995-NMCA-060, ¶ 16.

{34} We first consider the forfeiture of nonconsumptive water rights. Appellants beneficially used their nonconsumptive water rights through the cooling mechanism at the Loving Refinery. The district court concluded, however, that in 1948 Appellants stopped beneficially using the nonconsumptive water rights and thereafter forfeited those rights. Looking at the evidence in the light most favorable to the district court's conclusion, there is sufficient evidence to meet the clear and convincing standard. *See id.* A witness testified that after the installations of cooling towers, Appellants did not need the Pecos River water that it had used for cooling ore at the Loving Refinery; this was a major change because "that [cooling] was the primary use of water in the [Loving] refinery." Moreover, an expert witness testified that there is nothing to suggest that Appellants used its nonconsumptive water rights after 1948. Another expert witness further testified that the nonconsumptive use at

20

the Loving Refinery ceased to exist in 1948. This testimony supports the district court's conclusion that after Appellants installed the cooling towers in 1948, it no longer beneficially used its nonconsumptive water rights, triggering forfeiture as an operation of law four years later.

{35}     Next, we consider whether there is substantial evidence to support the conclusion that Appellants forfeited the remaining water rights after 1963. Appellants provided a water master report listing the metered annual diversions for the Loving Refinery from 1955 to 1973. The report shows that the maximum water diverted was 5,813.6 acre-feet in 1963. Appellants did not beneficially use water in excess of 5,813.6 at any point after 1963. Appellants do not specifically challenge these findings by the district court. Instead, Appellants request that this Court reconsider the evidence at trial and determine that the evidence did not "instantly tilt[] the scales in the affirmative when weighed against the evidence in opposition and the fact-finder's mind is left with an abiding conviction that the evidence is true." This we cannot do. *See Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (asserting that "we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder"). Instead, we take into account that Appellants argue for the clear and convincing evidence as the heightened burden of proof and use the established standard of review to determine whether the evidence is sufficient. *See Powers v. Miller*, 1999-NMCA-080, ¶ 14,

127 N.M. 496, 984 P.2d 177 ("When a party is required to prove a matter by clear and convincing evidence, our review on appeal takes this heightened standard of proof into account.").

{36} On appeal we must disregard all evidence and inferences contrary to the district court's forfeiture decision. *See McDermett*, 1995-NMCA-060, ¶ 16. Accordingly, we reject Appellants' invitation to engage in fact-finding by determining whether the district court "adopted the view least favorable to [Appellants]" when confronted with conflicting expert testimony, or "weighed competing evidence in favor of forfeiture." We further disregard all evidence presented by Appellants that provide statements from the OSE that the rights had not been lost through nonuse. *See id.* ¶ 19. We refuse to reweigh the evidence and conclude that there is substantial evidence to meet a preponderance or clear and convincing standard of proof. *See Las Cruces Pro. Fire Fighters*, 1997-NMCA-044, ¶ 12 ("[W]e will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder."). Consequently, because there is substantial evidence to support the conclusion that there was a nonuse period of at least four years for nonconsumptive and consumptive use water rights, we must determine whether the record supports that no circumstances beyond Appellants' control excused the nonuse. *See* § 75-5-26 (1941) (prescribing that "forfeiture shall not necessarily occur if circumstances beyond the control of the owner have caused nonuse"). We conclude it does.

{37}     Appellants argue that insufficient water, adverse economic factors, and low quality of ore excuse the nonuse. The record, however, provides substantial evidence to support the district court's conclusion that external factors did not cause the nonuse and that Appellants "could have put additional Pecos River water to beneficial use through diligent efforts but elected not to do so." Expert witnesses for both parties testified that there was sufficient available water to supply maximum demand of the Loving Refinery. Specifically, Dr. Barroll testified that the surface water in the Pecos River was sufficient to supply a total of 19,836 acre-feet per year—three-fold the maximum amount used—every month from 1955 to 1963. Comparatively, the maximum amount of water consumed by Appellants between 1955 and 1964 was the 5,813.6 acre-feet consumed in 1963.

{38}     Moreover, we can reasonably infer that Appellants did not have insufficient water based on their failure to use storage and supplemental groundwater wells available in case of water shortages. *See McDermett*, 1995-NMCA-060, ¶ 16 ("We . . . indulge all reasonable inferences in support of the verdict." (alteration, internal quotation marks, and citation omitted)). Appellants' first application for a permit to appropriate water stated that they intended to construct water storage "to provide against any possible temporary shortage for any cause whatever and at any time during the year." Similarly, the OSE granted Appellants a permit to "appropriate

23

shallow groundwater to supplement [their] existing rights under [their l]icenses." In both circumstances, however, Appellants never used the intended backstops.

{39} Appellants abandoned the planned storage reservoir and never used the supplemental well. Appellants contend that the district court failed to provide citation for its conclusion that the failure to use the storage reservoir and supplemental well supported a finding that the Pecos River water supply was sufficient to meet the water demands. As stated above, on appeal we "indulge all reasonable inferences in support of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted). The district court found, and Appellants fail to challenge, that "[s]torage is one of the most important ways by which a surface water user can protect itself from a variable surface water supply," and that "[s]upplemental groundwater wells are also a recognized method of addressing a variable surface water supply." An unchallenged finding of the district court is binding on appeal. *Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 N.M. 489, 816 P.2d 1111. Therefore, the purpose of these water depositories and Appellants' nonuse lead to the reasonable inference that Appellants had no need for them because the water supply was sufficient.

{40} Further, neither adverse economic factors nor the quality of the ore excuse Appellants' nonuse. Evidence demonstrates that notwithstanding the increased competition in the potash industry, in 1958 Appellants increased production and had

24

the highest deliveries in company history by 1959. Moreover, beginning in 1954, Appellants consistently reinvested in its operations and an expert witness testified that similar companies do not make large investments unless there is a positive outlook for the finances and materials. This evidence leads to the reasonable inference that adverse economic factors did not cause Appellants' lack of beneficial use of its water rights. Similarly, although the quality of ore began to decline, Appellants increased their high-grade reserves through purchases, additional core drilling, and development of special mining techniques that permitted the extraction of previously inaccessible ore. Simply put, the quality of the ore was not the reason for Appellants' failure to use its water rights.

{41} Appellants lastly argue that "the clearest indication that the [district] court failed to apply a clear and convincing standard is that it could not state with precision when any forfeiture occurred." Appellants, however, do not develop this argument and fail to cite authority for the proposition that failure to provide exact dates necessarily means that the clear and convincing standard is not met. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to consider an undeveloped argument); *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Moreover, we disagree with Appellants' characterization of the dates provided by the district court. The district

25

court specifically concluded Appellants forfeited their nonconsumptive water rights four years after the installation of the cooling towers. Similarly, the district court concluded that Appellants forfeited their consumptive water rights in excess of 5,813.6 acre-feet after 1963, presumptively four years after its maximum use. The evidence discussed above supports the forfeiture dates the district court provided. We conclude that the record sufficiently supports the conclusions reached by the district court.

**III.     The District Court Did Not Err in the Abandonment Adjudication**

{42}     We consider whether the district court properly concluded that Appellees proved that Appellants abandoned the remaining water rights beyond the 150 acre-feet per year by clear and convincing evidence. *See Gray*, 2021-NMCA-066, ¶ 104 ("[T]he burden is placed on the party asserting abandonment to provide proof by clear and convincing evidence."). We review the record for substantial evidence supporting the district court's conclusion. *See id.* ¶ 117 (using substantial evidence as the standard of review). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted). "In reviewing a record, we indulge every presumption in favor of the correctness of the findings, conclusions, and judgment of the district court." *Gray*, 2021-NMCA-066, ¶117 (alteration, internal quotation marks, and citation

omitted). Appellants argue that the district court's "findings establish that [Appellants] had engaged in conduct incompatible with an intent to abandon." Appellees respond that Appellants failed to rebut the presumption of abandonment established by the nonuse. As we explain, we agree with Appellees.

{43} We begin by discussing the law of abandonment. "Abandonment requires the confluence of both intention and act. Mere nonuse[sic] is not in itself an abandonment. The intention of the party is always a controlling consideration. Nonuse is competent evidence on the question of abandonment and if continued for an unreasonable period of time may create a presumption of intention to abandon, though this presumption is not conclusive" *Id.* ¶ 104 (alterations, omission, internal quotation marks, and citation omitted). Water right users can rebut this presumption by providing sufficient evidence of their intent not to abandon. *See id.* ¶ 111. Intent can be established either expressly or implicitly. *S. Springs Co.*, 1969-NMSC-023, ¶ 12. "[B]ecause the matter involves questions of subjective intent, the question is peculiarly within the province of a [district] court to determine from all the facts and circumstances of each particular case whether abandonment has or has not taken place." *Gray*, 2021-NMCA-066, ¶ 104 (internal quotation marks and citation omitted).

{44} A valid excuse for nonuse may rebut the presumption of abandonment because such circumstances conform to the acknowledged purpose of our water

laws. "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3. "That provision captures the purpose of our water laws, which is to encourage use and discourage nonuse or waste." *Romero*, 2022-NMSC-022, ¶ 12 (internal quotation marks and citation omitted). The beneficial use of water forms the basis for the right of an appropriator to take water. *See Gray*, 2012-NMCA-066, ¶ 103. "The right to continue using water depends on the continued use of the water." *Id.* Accordingly, "an intention to abandon may be inferred in the absence of proof of some fact or condition excusing such nonuse." *S. Springs Co.*, 1969-NMSC-023, ¶ 22 (internal quotation marks and citation omitted). This fact or condition cannot be merely an expression of desire or hope to retain the water rights. *See id.* ¶ 21. If the water rights user cannot present a valid excuse, they must rebut the presumption with additional evidence of an intent not to abandon. *See Gray*, 2021-NMCA-066, ¶ 111. To help the district courts determine whether the appropriator rebuts the presumption, this Court referenced a seven-factor framework[2] where "[t]he pattern that emerges . . . is that abandonment will be found if the user can be said to have done nothing to use water or protect facilities

---

[2]The factors are: "(1) repair and maintenance of structures; (2) attempts to put the water to beneficial use; (3) active diversion records and non-appearance of the water right on the state engineer's abandonment list; (4) diligent efforts to sell the water rights; (5) filing documents to protect, change, or preserve the right; (6) leasing the water right; and (7) economic or legal obstacles to exercising the water right." *Id.* ¶ 111 (alterations, internal quotation marks, and citation omitted).

over extended periods of time." *Id.* ¶ 112. This framework provides guidance without replacing the established concepts of abandonment. *See id.* ¶ 106 (explaining that New Mexico's jurisprudence on abandonment does not differ from the general ideas discussed by this Court). Having provided a summary of abandonment law, we now turn to Appellants' arguments.

{45} Appellants insist the district court misapplied "*Gray's* mandate requiring that abandonment rest on a finding of intent instead of a failure to 'excuse nonuse.'" We disagree. The district court properly considered whether Appellants provided evidence of an excuse; such evidence may have been sufficient to rebut the presumption, but is not necessary. *See Chavez v. Gutierrez*, 1950-NMSC-004, ¶ 8, 54 N.M. 76, 213 P.2d 597 (rejecting an abandonment argument because the failure to use the water was beyond the user's control); *N.M. Prods. Co. v. N.M. Power Co.*, 1937-NMSC-048, ¶ 22, 42 N.M. 311, 77 P.2d 634 (holding that the user could not be held to have intended to not use water when it did not reach its ditch because all of the water had been diverted upstream). Instead of finding a valid excuse preempting the exception, however, the district court concluded that Appellants were speculators, which as we explain, supported an intent to abandon rather than an intent to use the water. *See Gray*, 2021-NMCA-066, ¶ 104 (noting that if the district court determines a user is a speculator, the district court may exercise its discretion to require greater evidence of intent not to abandon).

29

**{46}** In cases where water users are speculators, intent not to abandon must be based on intent to actually apply water to beneficial use. *See* N.M. Const. art. XVI, § 3 ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water."). Speculators are water rights owners who do not beneficially use the water rights and provide "merely expressions of desire or hope" to use the water rights at an undefined point when it is financially profitable. *See S. Springs Co.*, 1969-NMSC-023, ¶ 21 (internal quotation marks and citation omitted). Such speculative behavior is not a valid excuse for the nonuse. *Id.* Appellants argue that the district court misapplied *Gray* by dismissing permissible evidence in its favor as "speculative conduct." In *Gray*, however, the district court explicitly refused to find that the water rights owners were speculators, found that the users presented evidence of a valid excuse for the nonuse, and offered further evidence of the intent not to abandon. 2021-NMCA-066, ¶¶ 100, 117. Here, the district court found that Appellants were speculators, that they did not provide evidence of a valid excuse, and that they did not provide sufficient evidence of an intent not to abandon. As a result, consistent with *Gray*, the district court found that evidence of speculation satisfied the general principle that "abandonment will be found if the user can be said to have done nothing to use water or protect facilities over extended periods of time." *Id.* ¶ 112.

**{47}** Out-of-state case law that New Mexico courts have relied on supports the conclusion that evidence of not wanting to lose the water rights solely for financial reasons is insufficient for speculators to rebut the presumption of abandonment. Colorado's approach, which we find instructive on abandonment law, *see id.* ¶ 113 ("We agree with Colorado's approach to the issue."), establishes that a desire to simply keep water rights "divorced from any intent to apply the water to beneficial use, is insufficient to overcome the inference of abandonment that arose from decades of nonuse." *Protest of McKenna*, 2015 CO 23, ¶ 27, 346 P.3d 35. Similarly, in *Public Utility District v. State Department of Ecology*, 51 P.3d 744 (2002) (en banc), which this Court cited favorably in *Gray*, 2021-NMCA-006, ¶ 113, the Washington Supreme Court highlighted the difference between consistent attempts to beneficially use the water and passively waiting for economic opportunities. *Pub. Util. Dist.*, 51 P.3d at 756 ("The [d]istrict engaged in repeated, and ongoing attempts to come up with a feasible hydroelectric project. It did not simply wait until economic conditions improved or future events occurred that provided uses for water."). Accordingly, we consider the district court's conclusion that Appellants were speculators and established no excuse for nonuse, along with the other evidence, to determine if substantial evidence supports the district court's conclusion that Appellants abandoned their water rights.

31

{48} Clear and convincing evidence demonstrates an intent to abandon. *See Gray*, 2021-NMCA-066, ¶ 112 ("[A]bandonment will be found if the user can be said to have done nothing to use water or protect facilities over extended periods of time."). Appellants argue only that it rebutted the presumption of abandonment and does not contend that its nonuse of the water rights did not give rise to a presumption of abandonment or that it failed to present evidence to excuse the nonuse. An unchallenged finding of the district court is binding on appeal. *See Stueber*, 1991-NMSC-082, ¶ 9. Therefore, we review the record for substantial evidence to support the result that Appellants failed to rebut the presumption of abandonment. *See Las Cruces Pro. Fire Fighters*, 1997-NMCA-044, ¶ 12 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached.").

{49} Indulging all presumptions in support of the district court's decision, as we must, we find that Appellants failed to rebut the presumption of abandonment under the *Gray* framework. *See* 2021-NMCA-066, ¶ 117. "[A]bandonment will be found if the user can be said to have done nothing to use water or protect facilities over extended periods of time." *Id.* ¶ 112. As we explain, substantial evidence demonstrates that Appellants did not make repairs or maintain the structure to use the Pecos River water or sufficiently attempt to beneficially use the water. The OSE appropriated Appellants' water rights for industrial use at the Loving Refinery.

Internal memorandum demonstrates that Appellants were aware that shutting down the Loving Refinery would halt beneficial use of the water rights, as the water rights would become "non-productive asset[s]." Nevertheless, in June 1973 Appellants shut down the Loving Refinery and did not make further significant efforts to put the water right to beneficial use. Evidence demonstrates that Appellants did not intend to continue using the water rights. To the contrary, Appellants decided to dismantle the Loving Refinery and considered the water rights point of use abandoned. Further, witnesses testified to the disrepair of the infrastructure at the point of use demonstrating the lack of repairs by Appellants and their intent to abandon their use.

{50}     Moreover, the district court took judicial notice that Appellants did not object to the Settlement Agreement. The Settlement Agreement was entered into by water users to develop collaborative solutions that would ensure the long-term compliance with the Pecos River Compact. The parties that entered into the Settlement Agreement allocated zero diversion to Appellants because they assumed the water rights had been purchased or abandoned. The Settlement Agreement was incorporated into the partial final decree in *Lewis*, 2007-NMCA-008. The adjudicating court provided all interested persons to the water rights potentially affected by the partial final decree, including Appellants, notice of the opportunity to object to the Settlement Agreement or the partial final decree. *See id.* ¶¶ 15-16.

To reiterate, Appellants did not object. The intent of the Settlement Agreement was for the ISC to purchase all the valid water rights from Avalon Dam to the state line to ensure state line deliveries. Testimony demonstrates that parties to the Settlement Agreement would not have entered into it if they had believed that Appellants did not intend to abandon their water rights; such a claim would have made state line deliveries impossible. Failure to object to such a significant and consequential development to the water rights in the Pecos River stream system is evidence that supports the district court's conclusion that Appellants had abandoned their water rights.

{51} Similarly, reports presented to the district court demonstrate that Appellants failed to establish a "record of diligent efforts in pursuing [their] rights," supporting the district court's abandonment determination. Although Appellants maintain that they "acted diligently to preserve its water rights by seeking and obtaining extensions of time" and that discussions to transfer the water rights to third parties rebutted the abandonment presumption, we must disregard all evidence contrary to the district court's conclusion. *See McDermett*, 1995-NMCA-060, ¶ 16. And in any event, beneficial use of the water rights never resumed despite extensions or transfer efforts afforded to or undertaken by Appellants.

{52} Our review of the record reveals that, indulging all permissible inferences in favor of the district court's decision, the only diligent effort by Appellants to transfer

the water rights was to the United Salt Corporation. Accordingly, there is substantial evidence to support the district court's conclusion that Appellants abandoned the remaining water rights, except for 150 acre-feet per year.

**IV.    The Issue of Whether the District Court Erred in Denying Appellants' Joint Motion to Intervene is Moot**

{53}    Because we affirm the district court's conclusion that Appellants lost the pertinent water rights, we must now consider whether there is live controversy in Case 1 that this Court can resolve. In its motion to dismiss the appeal, Objectors argue that the district court's forfeiture and abandonment adjudication of Appellants' water rights "renders any further action by the . . . Appellants herein absolutely moot." Appellants respond that (1) Objectors failed to "inform this Court that the [forfeiture and abandonment] adjudication ha[d] been appealed"; (2) that there is a continuing impact, regardless of the adjudication; and (3) that exceptions to mootness apply. Considering that we affirm the district court's forfeiture and abandonment adjudication of Appellants' water rights, we agree with Objectors and reject Appellants' first argument. Turning to Appellants' second and third argument, we conclude that the issue is moot.

{54}    In general, we dismiss an appeal when the issues in the case have become moot. *Howell v. Heim*, 1994-NMSC-103, ¶ 7, 118 N.M. 500, 882 P.2d 541. "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (internal

35

quotation marks and citations omitted). Here, no actual controversy exists because this Court's decision to affirm the forfeiture and abandonment adjudication dispossesses Appellants of all pertinent water rights. Without valid water rights, Appellants cannot apply to change the point of diversion or the place and purpose of use of the water. *See* NMSA 1978, § 72-5-24 (1985) (prescribing that only an "appropriator of water . . . may change the place of diversion, storage or use"). Without valid applications, there is no basis for the preliminary authorizations notwithstanding whether Objectors properly omitted Appellants as defendants in their petition for writ of mandamus. *See* NMSA 1978, §§ 72-6-2 to -3 (1967, as amended through 2019) (prescribing that only owners of valid water rights may lease use of the water). Consequently, a ruling reversing the district court's denial of the motion to intervene would not grant Appellants any actual relief. *See Leonard v. Payday Pro./Bio-Cal Comp.*, 2008-NMCA-034, ¶ 9, 143 N.M. 637, 179 P.3d 1245 (holding that the appeal was moot where this Court could not provide the appellant with any actual relief). We next turn to Appellants' arguments that an exception to the doctrine of mootness applies.

{55} New Mexico "courts recognize two exceptions to the prohibition on deciding moot cases: cases which present issues of substantial public interest, and cases which are capable of repetition yet evade review." *Republican Party of N.M. v. N.M. Tax'n*

*& Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853 (internal quotation marks and citation omitted). We conclude that neither exception applies here.

{56} "A case presents an issue of substantial public interest if it involves a constitutional question or affects a fundamental right such as voting." *Id.* In this case, the district court's denial of Appellants' motion to intervene does not affect an interest or fundamental right because Appellants no longer have an ownership interest in the water rights. Therefore, denial of Appellants' motion to intervene does not rise to the substantial public interest necessary to merit consideration. *See id.* Furthermore, the district court based its denial of the motion to intervene on its conclusion that the OSE adequately represented Appellants' interest as prescribed in Rule 1-024(A)(2) NMRA. This conclusion is a factual question where we afford "a good deal of discretion" to the district court. *See In re Termination of Parental Rights of Melvin B., Sr.*, 1989-NMCA-078, ¶ 8, 109 N.M. 18, 780 P.2d 1165. Consequently, we agree with Appellees that the ultimate question of whether the OSE adequately represented the Appellants' interest is a factually intense issue that does not present a substantial public interest. Moreover, Appellants fail to identify "a concern with [the] consistent mishandling of processes" that would result in this issue rising to the level of a substantial public interest. *See Bernalillo Cnty. Health Care Corp. v. N.M. Pub. Regul. Comm'n*, 2014-NMSC-008, ¶ 14 319 P.3d 1284 ("In addition we are concerned with the consistent mishandling of processes by the [c]ommission and it

37

is therefore in the public's interest that we clarify the limits of the [c]ommission's power to grant businesses the authority to transport persons."). Accordingly, we conclude that whether the district court erred in denying the motion to intervene is not an issue of substantial public interest.

{57} Next, while inappropriately denying a motion to intervene is no doubt capable of repetition, we disagree with Appellants that the issue will evade review. Appellants argue that in the context of a petition for writ of mandamus to compel withdrawal of a preliminary approval, the issue of whether a district court inappropriately denied a motion to intervene will no longer be active once the OSE decides the underlying water applications. In this case, however, the forfeiture and abandonment adjudication rendered the issue moot, not the OSE's application decision. Appeal is available for parties in the future who are denied an opportunity to intervene and maintain their water rights, regardless of the OSE's ultimate decision. *See Apodaca v. Town of Tome Land Grant*, 1974-NMSC-026, 86 N.M. 132, 520 P.2d 552 (explaining an order denying a motion to intervene is appealable only if the district court has abused its discretion). Based on the foregoing, we conclude that the issue is moot and neither of the two exceptions apply

**CONCLUSION**

{58} For the foregoing reasons, we affirm Case 1. Because Case 2 is moot, no further action is necessary.

38

{59}  **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**MEGAN P. DUFFY, Judge**